IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

SD WHEEL CORP.

       Plaintiff,

       v.                              Case No.:
                                        JURY DEMANDED

LOGFRET, INC.

       Defendant.

## COMPLAINT

The Plaintiff, SD Wheel Corp ("SD Wheel"), by its undersigned attorneys, Davis & Kuelthau, s.c., as and for its Complaint against the Defendant, Logfret, Inc. ("Logfret"), alleges as follows:

### NATURE OF THE ACTION

1.    This dispute arises from a breach of contract and breach of fiduciary duty by Logfret, over which the Court has diversity jurisdiction.

### THE PARTIES

2.    The Plaintiff, SD Wheel Corp, is an Illinois corporation registered to transact business in Wisconsin with a principal place of business located at 1300 S. River St., Batavia, IL 60510.

3.    SD Wheel sells automotive equipment, including wheels, tires, lift kits, and other automotive accessories. SD Wheel imports some of the automotive equipment it sells from China. SD Wheel has facilities in Appleton, Wisconsin, Wrightstown, Wisconsin, and Batavia, Illinois.

4. SD Wheel's Director of Logistics and Trade Compliance Manager are both employed in its Wrightstown facility. They are two of the primary employees who manage SD Wheel's logistics and trade.

5. Upon information and belief, Logfret is a Delaware corporation whose registered agent is United States Corporation Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

6. Upon information and belief, Logfret's principal place of business is located at 301 Penhorn Avenue, Suite 1, Secaucus, NJ 07094.

7. Upon information and belief, Logfret also has a regional office located in Elgin, Illinois. Upon further information and belief, Logfret's Elgin regional office managed many of the tasks at issue in this dispute and representatives of this office communicated with SD Wheel representatives.

8. Logfret is a global logistics company, which coordinates international freight transportation. Logfret also offers distribution and warehousing services.

9. Additionally, Logfret manages the custom and import processes for customers as part of the freight transportation process.

## JURISDICTION AND VENUE

10. This Court has exclusive, original subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the Court has diversity jurisdiction over this dispute.

11. SD Wheel is a citizen of Illinois.

12. Upon information and belief, Logfret is a citizen of Delaware and New Jersey.

13. The amount at issue is over $300,000.

2

14.     Upon information and belief, this Court has personal jurisdiction over Logfret because it is engaged in substantial and not isolated activities within Wisconsin, pursuant to Wis. Stat. § 801.05, including coordinating the interstate transportation of freight and/or transporting and/or importing freight for businesses in Wisconsin. These importation and/or freight transportation services constitute continuous and systemic contacts with Wisconsin, such that the Court has personal jurisdiction.

15.     Additionally, this Court has personal jurisdiction over Logfret because it has engaged in substantial and not isolated activities with Wisconsin, pursuant to Wis. Stat. § 801.05, including misrepresentations and omissions made to SD Wheel's Wisconsin based employees via both by teleconference and e-mail regarding the imports Logfret was managing for SD Wheel.

16.     Logfret has purposefully directed activities at the State of Wisconsin and at this judicial district by making statements and misrepresentations to SD Wheel, and specifically SD Wheel employees located within this judicial district.

17.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1)–(2). Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in this judicial district because Logfret is deemed to reside in Wisconsin pursuant to 28 U.S.C. § 1391(c)(2). Additionally, venue is proper because a substantial part of the events and omissions occurred in this judicial district, in particular a substantial part of the omissions, statements, and misrepresentations were made to SD Wheel's employees in this judicial district.

# FACTUAL ALLEGATIONS

## I.   Section 301 Duty Refund Factual Allegations

18.    Since at least 2014, SD Wheel hired Logfret to transport and import freight. The freight primarily consisted of parts that SD Wheel imported from manufacturers in China.

19.    On November 12, 2014, SD Wheel executed a Power of Attorney for Customs and Forwarding Agent ("POA"), under which Logfret would act as SD Wheel's authorized agent.

20.    Specifically, the POA provided that on behalf of SD Wheel, Logfret may:

Make, endorse, sign, declare, or swear to any customs entry, withdrawal, declaration, certificate, bill of lading, carnet, shipper's export declaration, commercial invoice, insurance certificate, draft or any other document(s) required by law or regulation in connection with the exportation, importation or transportation of any merchandise in or through the customs territory, shipped or cosigned by or to said grantor;

Perform any act or condition which may be required by law or regulation of the Department of Commerce, Department of Treasury, Census Bureau, or any other governmental agency in connection with such merchandise deliverable to or from said grantor; to receive or ship any merchandise;

. . .

Authorize other Customer Brokers duly licensed within the territory to act as grantor's agent; to receive, endorse and collect checks issued for Customs duty refunds in grantor's name drawn on the Treasurer of the United States or otherwise on behalf of grantor, if the grantor is a nonresident of the Territory, to accept service of process on behalf of the grantor. Grantor acknowledges receipt of; LOGFRET, INC. Terms and Conditions of Service governing all transactions between the Parties.

And generally, to transact Customs business, including filing of claims or protests under Section 514 of the Tariff Act of 1930, or pursuant to other laws of the Territories, in which said grantor is or may be concerned or interested and which may properly be transacted or performed by agent and attorney . . . .

21.     Since executing the POA, Logfret has acted as SD Wheel's authorized agent in handling the importation and transportation of freight. Included in these actions, Logfret would pursue duty refunds for which SD Wheel was eligible.

22.     When goods are imported into the United States, an entry is filed with U.S. Customs and Border Protection ("CBP") to enter goods into U.S. Commerce.  Estimated import duties, taxes, and fees are deposited within ten (10) business days after time of entry.

23.     Typically, within 314 days after entry, U.S. Customs will liquidate the entry by determining the final amount of duties, taxes, and fees.  If the final amount of duties, taxes, and fees is equal to the estimated duties deposited or within a net difference of less than $20, CBP shall endorse the entry as entered.  If the net difference is $20 or greater, CBP shall issue a bill to the importer for the net difference.

24.     An importer has 180 days from the date of liquidation to file a protest (CBP Form 19) on an entry.

25.     If a company protested the entry, the liquidation period is extended by a year, for up to four years.

26.     In July 2018, the United States imposed tariffs on Chinese imports under the Trade Act of 1974, known as "Section 301 Tariffs."

27.     Throughout late 2018 and early 2019, SD Wheel imported parts which were subject to the Section 301 Tariffs, which SD Wheel paid to U.S. Customs as it imported certain parts it used in its regular course of business.

28.     When the Section 301 Tariffs were implemented, the Office of the United States Trade Representative ("USTR") also implemented an exclusion process. In 2019, the USTR began issuing a series of lists of goods which would be excluded from the tariffs. These

exclusions were meant to be retroactive to tariffs paid as early as July 2018. Ultimately, four lists were issued.

29.     If a company paid a Section 301 Tariff on an item that was later identified on one of the exclusionary lists (Lists 1–4), the company could seek a refund of the tariff paid (a "Duty Refund").

30.     However, a company could only seek a Duty Refund either prior to liquidation or within 180 days after the entry had been liquidated.

31.     On November 19, 2019, SD Wheel representatives sent three emails, labeled "Duty Refund Email #1," "Duty Refund Email #2," and "Duty Refund Email #3" (collectively "Duty Refund Emails") to Logfret representatives.

32.     In each email, SD Wheel identified import entries by container number and provided all the documents necessary to begin the refund process.

33.     Between the three emails, 42 container numbers were identified which corresponded to 31 entries.

34.     Fifteen container numbers (ten entries) were identified in Duty Refund Email #1.

35.     Sixteen container numbers (eleven entries) were identified in Duty Refund Email #2.

36.     Eleven container numbers (ten entries) were identified in Duty Refund Email #3.

37.     Each entry had its own import date, liquidation date, and protest date.

38.     The 21 entries identified in Duty Refund Emails # 2 and 3 are the entries and refunds at issue in this dispute and are identified below:

6

| Shipment Entry # | Import Date | Date Duty Paid to U.S. Customs | Liquidation Date | Protest Deadline Date | Duty Eligible for Exclusion | Duty Refund Email |
|---|---|---|---|---|---|---|
| 045-0448407-4 | 02/15/19 | 03/14/19 | 01/24/20 | 07/22/20 | $5,687.50 | 2 |
| 045-0449963-5 | 02/19/19 | 03/11/19 | 01/24/20 | 07/22/20 | $4,153.00 | 2 |
| 045-0448616-0 | 02/25/19 | 03/22/19 | 02/07/20 | 08/05/20 | $5,180.00 | 2 |
| 045-0450738-7 | 03/16/19 | 04/01/19 | 02/14/20 | 08/12/20 | $5,007.00 | 2 |
| 045-0451491-2 | 03/28/19 | 04/15/19 | 02/28/20 | 08/26/20 | $4,301.20 | 2 |
| 045-0452783-1 | 03/29/19 | 05/09/19 | 03/20/20 | 09/16/20 | $10,164.60 | 2 |
| 045-0453850-7 | 05/10/19 | 05/28/19 | 04/10/20 | 10/07/20 | $5,545.90 | 2 |
| 045-0455261-5 | 06/01/19 | 06/14/19 | 05/01/20 | 10/28/20 | $28,585.25 | 2 |
| 045-0455641-8 | 06/06/19 | 06/24/19 | 05/08/20 | 11/04/20 | $30,411.00 | 2 |
| 045-0456717-5 | 06/27/19 | 07/19/19 | 06/05/20 | 12/02/20 | $40,808.00 | 2 |
| 045-0456776-1 | 07/02/19 | 07/26/19 | 06/12/20 | 12/09/20 | $14,013.50 | 2 |
| 045-0457035-1 | 07/02/19 | 07/26/19 | 06/12/20 | 12/09/20 | $13,987.75 | 3 |
| 045-0458434-5 | 07/09/19 | 08/01/19 | 06/12/20 | 12/09/20 | $13,618.25 | 3 |
| 045-0458778-5 | 07/17/19 | 08/15/19 | 06/26/20 | 12/23/20 | $13,447.50 | 3 |
| 045-0458978-1 | 07/29/19 | 08/21/19 | 07/03/20 | 12/30/20 | $26,679.00 | 3 |
| 045-0460618-9 | 08/16/19 | 09/11/19 | 07/24/20 | 01/20/21 | $12,236.00 | 3 |
| 045-0462218-6 | 09/20/19 | 10/10/19 | 08/21/20 | 02/17/21 | $14,625.25 | 3 |
| 045-0462639-3 | 09/27/19 | 10/10/19 | 08/21/20 | 02/17/21 | $14,001.75 | 3 |
| 045-0462852-2 | 10/01/19 | 10/25/19 | 09/11/20 | 03/10/21 | $12,502.00 | 3 |
| 045-0462784-7 | 10/08/19 | 10/18/19 | 09/04/20 | 03/03/21 | $16,291.00 | 3 |
| 045-0463354-8 | 10/23/19 | 11/05/19 | 09/18/20 | 03/17/21 | $15,032.25 | 3 |

39.     After sending the Duty Refund Emails, SD Wheel emailed Logfret and informed them that they would need to submit the duty refund paperwork for entries that qualified for the Section 301 exclusions.

40.     SD Wheel also informed Logfret that it provided three separate emails which contained the shipment information for all the relevant entries.

41.     On the evening of November 19, 2019, Logfret responded to Duty Refund Email #3. Logfret indicated that it had received the information, sent the information to the broker, and that Logfret would provide more details as soon as available.

42.     At the time the Duty Refund Emails were sent, SD Wheel was eligible for Section 301 Refunds on all thirty-one identified entries, which would have amounted to refunds totaling $306,277.70.

43.     Likewise, when the Duty Refund Emails were sent, the liquidation dates and protests deadline dates had not yet occurred.

44.     Several days later, Logfret asked SD Wheel to confirm that there was an applicable Section 301 Refund for the entries.

45.     By November 25, 2019, SD Wheel confirmed that its entries were eligible for a Section 301 Refund.

46.     After several months without hearing anything further as to the status of the refunds, SD Wheel began reaching out to Logfret again via several phone calls.

47.     On March 27, 2020, Logfret confirmed that "all of them [the duty refunds] have been submitted" and that it "will take months" to receive the refund and maybe longer due to CoVid-19.

48.     After March 2020, SD Wheel continued to follow up on the status of the Section 301 Refunds with Logfret.

49.     On August 11, 2020, SD Wheel's new Director of Logistics reached out to Logfret asking Logfret for the historical data it had for SD Wheel, including historical import data.

50.     SD Wheel's Director did not receive any historical import data in response to her August 11, 2020, email.

51.     On September 30, 2020, SD Wheel's Director reached out to Logfret again and explicitly asked for the last five years of import and export data.

52.     She also asked for documentation on all the duty refunds, duty protests, and post summary corrections ("PCSs") Logfret or its broker had filed on behalf of SD Wheel.

53.     SD Wheel's Director received no documentation or information related to the last five years of import/export data or duty refunds, duty protests, or PSCs filed on behalf of SD Wheel.

54.     On October 5, 2020, SD Wheel's Director followed up on her September 30, 2020, email and asked to meet with someone from Logfret to discuss the issues raised in her email.

55.     In response, Logfret stated "we will get in touch with you and go over items."

56.     Despite Logfret's response, it did not provide SD Wheel's Director with the documentation she requested, nor did it provide her with an update on the status of any duty refunds, duty protests, or PSCs.

57.     On January 11, 2021, SD Wheel's Director reached out again and asked for access to Logfret's system so that she could pull SD Wheel's import and export information.

58. SD Wheel's Director was repeatedly told that Logfret was working on it in follow-up correspondence; however, even two months later, she still did not have access.

59. On March 2, 2021, SD Wheel's new Trade Compliance Manager reached out to Logfret seeking more information about Logfret's communications and recordkeeping.

60. On March 9, 2021, SD Wheel's Manager detailed SD Wheel's expectations about the import entry, entry correction, and export filing documentation that Logfret was expected to provide when Logfret was acting as SD Wheel's agent in handling all such documentation.

61. Ultimately, because Logfret failed to respond or provide the information, SD Wheel's Manager reached out directly to the broker Logfret had used to process the Section 301 Refunds and duty process.

62. Upon information and belief, although Logfret provides brokerage services for their other customers, Logfret elected to outsource the brokerage for SD Wheel's account. Logfret owns the relationship with the third-party broker. SD Wheel did not communicate directly with the third-party broker. Rather, SD Wheel communicated with Logfret. Logfret was then responsible with either conducting the brokerage activities themselves or relaying SD Wheel's communications to the third-party broker that it employed.

63. On March 25, 2021, the broker explained that it only received the shipment information from Duty Refund Email #1.

64. Unbeknownst to SD Wheel, Logfret only submitted the information from Duty Refund Email #1 to the broker to be processed and SD Wheel only received its Section 301 Refunds for those entries.

65. The broker then explained that because it had not received the other files, the refunds could not be sought because the other entries had all been liquidated and were past the time frame in which a protest could be filed.

66. The Duty Refund Emails #2 and 3 identified 21 entries for which SD Wheel was eligible for approximately $306,277.70 in refunds.

67. Because the duties paid on the entries identified in Duty Refund Emails #2 and 3 were past the protestable period, SD Wheel could not seek a Section 301 Refund for those entries and, thus, SD Wheel lost $306,277.70 in refunds for which it was eligible.

## II. Demurrage Factual Allegations

68. In December 2020, Logfret was acting as a broker on behalf of SD Wheel and was responsible for handling the customs clearance process for a shipment ("December 2020 Shipment").

69. As the broker, Logfret was responsible for monitoring the import process and to ensure it had all necessary documentation to file for entry when the shipment was received.

70. If the shipment did not have all the necessary information, it was Logfret's responsibility to acquire that information in a timely manner.

71. Additionally, it was Logfret's responsibility to file the entry information before the shipment arrived at the port of entry so that it could be processed and released.

72. On December 14, 2020, Logfret received the arrival notice for the December 2020 Shipment.

73. Upon information and belief, Logfret asserts that the arrival notice did not contain sufficient information to complete the entry documentation.

74.     One container on the December 2020 shipment arrived at the port of entry on December 23, 2020, the other container on December 24, 2020.

75.     Upon information and belief, Logfret waited until at least December 30 to follow up with the shipper regarding the information Logfret alleges was missing which prevented it from timely completing the entry documentation.

76.     On December 30, 2020, the December 2020 Shipment was released; however, SD Wheel's warehouse could not take the December 2020 Shipment until after the New Year's holiday.

77.     Because of the delays in processing the entry documentation and moving the shipment, SD Wheel incurred $7,700 in demurrage fees.

### III.     Missing Import and Export Documentation

78.     As SD Wheel's agent, Logfret was required to complete and maintain import, export, and custom documentation on behalf of SD Wheel.

79.     In March 2021, SD Wheel's Manager identified several import and post entry documentation and export documentation Logfret was responsible for creating and maintaining for SD Wheel.

80.     By March 15, 2021, SD Wheel's Manager identified several specific entries for which SD Wheel did not have all required import documentation.

81.     On March 29, 2021, SD Wheel's Manager sent another communication to Logfret to follow-up because there had been no response to her request seeking this documentation.

82.     Sometime in April 2021, SD Wheel was finally provided with access to Logfret's online documentation system in which it maintains its import and export documentation.

83. Upon gaining access, SD Wheel discovered that Logfret was missing documentation that it was required to complete and maintain on behalf of SD Wheel, including but not limited to the following important documentation: post entry documentation (when applicable), revised CBP Form 7501 (when applicable), Cargo Release (with proof of release annotation/indication), PGA print screen or disclaimer screenshot (when applicable), PGA Forms (when applicable), copies of any correspondence relating to the post entry action, commercial invoices rated per 19 C.F.R. § 141.90, and commercial invoice and pages numbered per 19 C.F.R. § 141.86(h).

84. Likewise, Logfret was missing the following export documentation that it was required to complete on behalf of SD Wheel, including but not limited to: the Electronic Export Information ("EEI") file and proof of export.

85. Logfret is required to maintain this import and export documentation for at least 5 years. *See* 19 C.F.R. §§ 163.1(a), 163.1(e), 163.2(a)(1)(i); 15 C.F.R. §§ 30.10(a), 762.1(b), and 762.2(a).

86. Despite numerous requests by SD Wheel's Director and Manager for this information since late 2020, Logfret has failed to provide the legally required import and export documentation it is required to maintain on behalf of SD Wheel.

87. On May 7, 2021, by and through counsel, SD Wheel sent a demand letter to Logfret requesting to be made whole for the lost Section 301 Refunds and demurrage charges from the December 2020 Shipment. SD Wheel also demanded access to its import and export documentation.

88. Logfret provided access to its on-line document system, however, Logfret did not otherwise respond. Even with access to the system, SD Wheel does not have all the required import and export documentation.

89. On June 8, 2021, by and through counsel, SD Wheel sent a follow-up correspondence to Logfret requesting reimbursement of the Section 301 Refunds and demurrage charges. SD Wheel also demanded that Logfret provide full access to all documentation or confirm that such documentation does not exist. SD Wheel asked Logfret to respond and indicated that if no responses were received, it would pursue all legal remedies, including the filing of a lawsuit.

90. As of the date this Complaint has been filed, Logfret has not responded.

## FIRST CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

91. SD Wheel repeats and realleges the allegations of Paragraphs 1 through 90 above as if fully set forth herein.

92. The POA executed by SD Wheel authorized Logfret to act as its agent.

93. One of Logfret's responsibilities as agent was to submit the Section 301 Duty Refunds to which SD Wheel was entitled.

94. On November 19, 2019, SD Wheel sent the three Duty Refund Emails to Logfret containing the information and documentation necessary to submit the Section 301 Refunds on behalf of SD Wheel.

95. On November 19, 2019, Logfret acknowledged receipt of the Duty Refund Email #3 and responded that it had submitted the material to its broker.

96. Logfret selected the broker it worked with and controlled communication to the broker.

Case 1:21-cv-00778-WCG   Filed 06/23/21   Page 14 of 25   Document 1

97.     By email, in March 2020, Logfret confirmed that all the Section 301 Duty Refunds had been submitted for processing.

98.     Unbeknownst to SD Wheel, Logfret did not submit all the containers and their documentation to the broker to be processed.

99.     Instead, Logfret only submitted Duty Refund Email #1 and the containers identified therein to the broker; therefore, SD Wheel only received a Section 301 Refund for the containers contained within Email #1.

100.    It was not until March 2021 that SD Wheel discovered that Logfret had failed to submit Duty Refund Emails #2 and 3 to the broker for processing.

101.    At that point, it was too late for SD Wheel to submit Section 301 Refunds for the containers identified within Duty Refund Emails # 2 and 3 because the entries had been liquidated and it was past the allowable time frame to file a protest.

102.    The containers identified within Duty Refund Emails # 2 and 3 were eligible for Section 301 Refunds totaling $306,277.70.

103.    Around August 11, 2020, SD Wheel's Director asked Logfret for all historical data, including import data.

104.    If Logfret had provided the import data on or around August 11, 2020, Logfret's failure to forward the other two emails would have been identified.

105.    If Logfret's error had been caught on August 11, 2020, only three of the 21 remaining eligible entries identified in Duty Refund Emails # 2 and 3 would have been liquidated and past the allowable period to file a protest. SD Wheel would have been able to file protests for Section 301 Duty Refunds, and liquidation protests, if necessary, for the remaining

18 eligible entries, which would have still totaled $291,257.20. SD Wheel would have only lost $15,020.50 in eligible refunds.

106.   On September 30, 2020, and October 5, 2020, SD Wheel's Director repeated her request for all import data and explicitly asked Logfret what duty refunds and protests Logfret's broker had filed for SD Wheel, as well as for all corresponding documentation.

107.   If Logfret had responded to this request and identified the duty refunds and protests that the broker had filed, Logfret's failure to forward Duty Refund Emails # 2 and 3 would have been discovered.

108.   Alternatively, if Logfret had provided SD Wheel's Director with all the documents for the duty refunds being processed by the broker, SD Wheel could have identified the 21 entries that the broker was not processing.

109.   If Logfret had responded and provided SD Wheel with the information it sought by September 30 or October 5, 2020, only six of the 21 entries would have been liquidated and past the allowable time frame to file a protest. SD Wheel would have been able to file protests for Section 301 Duty Refunds for the remaining fifteen entries. SD Wheel would still have been able to seek Section 301 Refunds totaling around $271,784.40. SD Wheel would have only lost $34,493.30 in eligible refunds.

110.   SD Wheel's Director reached out again around January 11, 2021, for access to Logfret's system.

111.   Likewise, around March 9, 2021, SD Wheel's Manager asked for the post entry information, including protest information.

112.   If either SD Wheel's Director or Manager had received the information they sought for SD Wheel, it would have been able to recover a few of the remaining eligible refunds.

113. Because SD Wheel did not receive the information from Logfret, SD Wheel was forced to ultimately reach out for such information from the broker, who provided it on March 25, 2021.

114. By March 25, 2021, all the entries identified in Duty Refund Emails #2 and 3 were liquidated and past the protestable period. Therefore, SD Wheel lost refunds in the amount of $306,277.70.

115. As SD Wheel's agent, Logfret occupied a position of trust and confidence with respect to SD Wheel. Therefore, Logfret owed SD Wheel a duty to exercise good faith, reasonable diligence, and standard skill in the performance of its duties.

116. Logfret had a duty to act with absolute fidelity and loyalty to the interests of SD Wheel.

117. Logfret had a duty to keep SD Wheel informed with respect to, and make full disclosure to SD Wheel of, all material facts that affect the subject of Logfret's agency.

118. Logfret had a duty to discharge its duties faithfully, so as to protect and serve the best interests of SD Wheel.

119. Logfret breached its duty to SD Wheel by failing to process all the Section 301 Refunds that SD Wheel had requested.

120. Logfret breached its duty to SD Wheel by informing SD Wheel that all the Section 301 Refunds had been processed when they had not been.

121. Logfret breached its duty by failing to act in SD Wheel's interest in processing the Section 301 Refunds.

122. Every time Logfret failed to provide the information SD Wheel had requested, Logfret breached its duty to SD Wheel.

123.    Because of Logfret's breach of duty, SD Wheel lost $306,277.70 in refunds to which it was entitled.

124.    As such, SD Wheel has been damaged by Logfret's breach of duty.

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED CONTRACT

125.    SD Wheel repeats and realleges the allegations of Paragraphs 1 through 124 above as if fully set forth herein.

126.    SD Wheel and Logfret had an implied contract that Logfret would process the Section 301 Refunds.

127.    This implied contract was created by SD Wheel's hiring of Logfret to manage the import process and SD Wheel's execution of the POA.

128.    Logfret received compensation for managing the import process.

129.    Logfret breached this implied contract by failing to process the Section 301 Refunds for the containers identified in Duty Refund Emails #2 and 3.

130.    SD Wheel was damaged by this breach of implied contract by losing refunds it was entitled to worth $306,277.70.

## THIRD CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATIONS

131.    SD Wheel repeats and realleges the allegations of Paragraphs 1 through 130 above as if fully set forth herein.

132.    On the evening of November 19, 2019, Logfret employee Dianne Smith told SD Wheel, in response to Duty Refund Email #3: "Received we have sent to broker will advise further details as soon as available."

133.    In response to an email asking if there was any news on the duty refunds, Logfret employee Dianne Smith said: "talked with the broker, all of them have been submitted it will take months now due to the corvid 19 [sic] it may even be further long".[1]

134.    These two statements, that the Section 301 Refunds have been submitted, are statements of fact.

135.    These representations were untrue.

136.    In September and October 2020, SD Wheel's Director asked Logfret, "what exclusions/protests/PSCs has the broker filed on our behalf?"

137.    Logfret, as SD Wheel's agent, had a duty to speak truthfully and to respond with the information requested.

138.    Logfret's silence is a representation of fact.

139.    Logfret's silence was untrue.

140.    Logfret was negligent in making these statements and/or omissions.

141.    Logfret failed to exercise ordinary care when making these statements.

142.    Logfret was the party that controlled communications to the broker.

143.    Logfret knew or should have known which information it provided to the broker.

144.    It was reasonable for Logfret to foresee that its misrepresentations would place SD Wheel at an unreasonable risk of damage.

145.    SD Wheel relied on the misrepresentations and was damaged because of the misrepresentations.

---

[1] All spelling and grammar is from the original email.

## FOURTH CAUSE OF ACTION
## NEGLIGENCE

146.    SD Wheel repeats and realleges the allegations of Paragraphs 1 through 145 above as if fully set forth herein.

147.    Logfret acted as SD Wheel's broker in handling the customs clearance for the December 2020 Shipment.

148.    As SD Wheel's broker, Logfret had a duty to act with ordinary care and skill in the importation process.

149.    As the broker, Logfret was responsible for managing and monitoring the import process.

150.    As the broker, Logfret was also responsible for ensuring it had all information necessary to file the entry documentation and to do so in a timely manner.

151.    As the broker, Logfret should have reviewed the information it had for the entry documentation and sought out any missing information before the shipment was received, so that the entry documentation could be filed before the shipment was received at the port of entry.

152.    Logfret had a duty to SD Wheel to meet industry standards in its actions as broker.

153.    Logfret breached this duty by failing to ensure it had the information to complete the entry documentation.

154.    Logfret breached its duty by failing to act in a timely manner.

155.    Because of Logfret's actions, the December 2020 Shipment incurred demurrage charges of $7,700 which were assessed against SD Wheel.

156.    Because of Logfret's actions, SD Wheel has been damaged.

## FIFTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

157.    SD Wheel repeats and realleges the allegations of Paragraphs 1 through 156 above as if fully set forth herein.

158.    As SD Wheel's agent, Logfret had a duty to exercise good faith, reasonable diligence, and act with standard skill in Logfret's performance of its duties.

159.    Logfret had a duty to keep SD Wheel informed with respect to, and make full disclosure to SD Wheel of, all material facts that affect the subject of Logfret's agency.

160.    Logfret had a duty to consult with SD Wheel on emergency developments, if an opportunity exists to do so.

161.    Logfret had a duty to exercise the skill and care standard for such employment in the community.

162.    Logfret had a duty to discharge its duties faithfully, so as to protect and serve the best interests of SD Wheel.

163.    Logfret failed to properly monitor and manage the December 2020 Shipment.

164.    Logfret failed to exercise ordinary care and skill in the importing process.

165.    Logfret failed to protect and serve the best interest of SD Wheel.

166.    In doing so, Logfret breached its fiduciary duty to SD Wheel.

167.    Because of Logfret's breach of duty, SD Wheel was charged a $7,700 demurrage charge.

168.    Because of Logfret's breach of duty, SD Wheel was damaged.

## SIXTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

169.    SD Wheel repeats and realleges the allegations of Paragraphs 1 through 168 above as if fully set forth herein.

170.    As SD Wheel's agent, Logfret had a duty to complete all import and export documentation required by law or regulation.

171.    As SD Wheel's agent, Logfret also had a duty to maintain for at least 5 years all import and export documentation required by law or regulation.

172.    Logfret has failed to complete and maintain all necessary import documentation as required by law or regulation, including failing to complete and/or maintain the following categories of documents:

     a.  post entry documentation (when applicable);

     b.  revised CBP Form 7501 (when applicable);

     c.  Cargo Release (with proof of release annotation/indication);

     d.  PGA print screen or disclaimer screenshot (when applicable);

     e.  PGA Forms (when applicable);

     f.  copies of any correspondence relating to the post entry action;

     g.  commercial invoices rated per 19 C.F.R. § 141.90; and

     h.  commercial invoice and pages numbered per 19 C.F.R. § 141.86(h).

173.    Logfret has failed to complete and maintain all necessary export documentation as required by law or regulation, including failing to complete and/or maintain the following categories of documents:

     a.  Electronic Export Information ("EEI") file; and

     b.  proof of export.

22

174. Logfret breached its duty to SD Wheel by failing to complete and maintain all such documentation.

175. SD Wheel, as the principal, is entitled to copies of all such documentation.

176. SD Wheel is ultimately responsible for having this documentation and could face penalties and/or fines for not maintaining it.

## SEVENTH CAUSE OF ACTION
## BREACH OF IMPLIED CONTRACT

177. SD Wheel repeats and realleges the allegations of Paragraphs 1 through 176 above as if fully set forth herein.

178. SD Wheel and Logfret had an implied contract that Logfret would create and maintain all documents necessary for SD Wheel's imports and exports as required by law and regulation.

179. This implied contract was created by SD Wheel's hiring of Logfret to manage the import process and SD Wheel's execution of the POA.

180. Logfret received compensation for managing the import process.

181. Logfret breached this implied contract by failing to create and maintain all such necessary information.

182. These documents are legally required documents which only Logfret can create.

183. SD Wheel lacks the information necessary to complete these documents as Logfret managed the relevant import or export process.

184. Moreover, SD Wheel can suffer severe consequences if it is audited by a governmental entity and fails to provide these legally required documents.

185. SD Wheel is entitled to specific performance of the implied contract by a Court order requiring Logfret to create and/or produce all missing documentation.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, SD Wheel Corp. prays that this Court enter judgment in its favor and against Defendant, Logfret, Inc. granting the following relief:

    A.  Monetary damages in an amount to be determined by the jury;

    B.  Ordering Logfret to create and/or produce all missing SD Wheel import and export documentation;

    C.  Ordering Logfret to pay SD Wheel's attorneys' fees and costs incurred in bringing this action, as applicable by law; and

    D.  Awarding such other and further relief as the Court deems proper.

**JURY DEMAND**

Plaintiff, SD Wheel Corp. hereby demands a jury trial as to the above cause of action.

Dated:  June 23, 2021.

DAVIS & KUELTHAU, S.C.

By*:*  s/ Sherry D. Coley
Sherry D. Coley
State Bar No. 1038243
Tiffany E. Woelfel
State Bar No. 1093779

Attorneys for Plaintiff,
*SD Wheel Corp.*

P.O. Address:
318 S. Washington Street, Suite 300
Green Bay, WI 54301
920.435.9378

Direct Contact Information:

Sherry D. Coley          920.431.2239 direct dial
                         920.431.2279 direct fax
                         scoley@dkattorneys.com

Tiffany E. Woelfel       920.431.2232 direct dial
                         920.431.2272 direct fax
                         twoelfel@dkattorneys.com