# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

SD WHEEL CORP,

       Plaintiff,

             v.                        Case No.: 1:21-cv-00778-WCG

LOGFRET, INC.,

       Defendant.

## DEFENDANT'S ANSWER & AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

NOW COMES Defendant, LOGFRET, INC. ("Logfret"), by its undersigned counsel, Foran Glennon Palandech Ponzi & Rudloff, PC and answer Plaintiff, SD WHEEL CORP.'S ("SD Wheel") Complaint, states as follows:

### NATURE OF THE ACTION

1.     This dispute arises from a breach of contract and breach of fiduciary duty by Logfret, over which the Court has diversity jurisdiction.

**Answer**: Logfret admits that SD Wheel has alleged claims for breach of fiduciary duty and breach of contract against Logfret, and that diversity of citizenship exists among the parties. Logfret denies any remaining allegations of this paragraph.

### THE PARTIES

2.     The Plaintiff, SD Wheel Corp, is an Illinois corporation registered to transact business in Wisconsin with a principal place of business located at 1300 S. River St., Batavia, IL 60510.

**Answer**: Logfret lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 2.

1

3.      SD Wheel sells automotive equipment, including wheels, tires, lift kits, and other automotive accessories. SD Wheel imports some of the automotive equipment it sells from China. SD Wheel has facilities in Appleton, Wisconsin, Wrightstown, Wisconsin, and Batavia, Illinois.

**Answer**: Logfret lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 3.

4.      SD Wheel's Director of Logistics and Trade Compliance Manager are both employed in its Wrightstown facility. They are two of the primary employees who manage SD Wheel's logistics and trade.

**Answer**: Logfret lacks knowledge or information sufficient to form a belief about the truth of the allegation of paragraph 4.

5.      Upon information and belief, Logfret is a Delaware corporation whose registered agent is United States Corporation Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

**Answer**: Admitted.

6.      Upon information and belief, Logfret's principal place of business is located at 301 Penhorn Avenue, Suite 1, Secaucus, NJ 07094.

**Answer**: Admitted.

7.      Upon information and belief, Logfret also has a regional office located in Elgin, Illinois. Upon further information and belief, Logfret's Elgin regional office managed many of the tasks at issue in this dispute and representatives of this office communicated with SD Wheel representatives.

**Answer**: Logfret admits that it maintains an office at 2531 Technology Drive, Suite 313, Elgin, Illinois and that communications between SD Wheel and Logfret regarding the matters at issue in the Complaint generally flowed through employees located at the Elgin office. Logfret denies any remaining allegations of this paragraph.

2

8.      Logfret is a global logistics company, which coordinates international freight transportation. Logfret also offers distribution and warehousing services.

**Answer**: Logfret is a company which offers services in the fields of international freight transport, cargo consolidation and de-consolidation, rail freight transport, project cargo, customs clearance, and warehousing and distribution. Logfret denies any remaining allegations of this paragraph.

9.      Additionally, Logfret manages the custom and import processes for customers as part of the freight transportation process.

**Answer**: Logfret is a company which offers services in the fields of international freight transport, cargo consolidation and de-consolidation, rail freight transport, project cargo, customs clearance, and warehousing and distribution. Logfret denies any remaining allegations of this paragraph.

## JURISDICTION AND VENUE

10.      This Court has exclusive, original subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the Court has diversity jurisdiction over this dispute.

**Answer**: Logfret admits that diversity of citizenship exists between plaintiff and defendant, and that Plaintiff has alleged that the value of the controversy exceeds $75,000. Logfret denies any remaining allegations of this paragraph.

11.      SD Wheel is a citizen of Illinois.

**Answer**: Logfret lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 11.

12.      Upon information and belief, Logfret is a citizen of Delaware and New Jersey.

**Answer**: Admitted.

13.      The amount at issue is over $300,000.

**Answer**: Logfret admits Plaintiff is claiming more than $300,000.

14.      The amount at issue is over $300,000. Upon information and belief, this Court has personal jurisdiction over Logfret because it is engaged in substantial and not isolated activities within Wisconsin, pursuant to Wis. Stat. § 801.05, including coordinating the interstate

3

transportation of freight and/or transporting and/or importing freight for businesses in Wisconsin. These importations and/or freight transportation services constitute continuous and systemic contacts with Wisconsin, such that the Court has personal jurisdiction.

**Answer**: Logfret admits that it has engaged in regular activities including coordinating interstate and/or international transportation of freight for businesses with locations in Wisconsin and that Logfret is claiming more than $300,000 in this lawsuit. Logfret denies any remaining allegations of this paragraph.

15. Additionally, this Court has personal jurisdiction over Logfret because it has engaged in substantial and not isolated activities with Wisconsin, pursuant to Wis. Stat. § 801.05, including misrepresentations and omissions made to SD Wheel's Wisconsin based employees via both by teleconference and e-mail regarding the imports Logfret was managing for SD Wheel.

**Answer**: Logfret denies that it engaged in any misrepresentations or omissions to SD Wheel's employees, whether based in Wisconsin or elsewhere. Logfret admits that it engaged in electronic communications with certain employees of SD Wheel regarding SD Wheel imports. Logfret lacks knowledge or information sufficient to form a belief as to the locations of those SD Wheel employees. Logfret denies any remaining allegations of this paragraph.

16. Logfret has purposefully directed activities at the State of Wisconsin and at this judicial district by making statements and misrepresentations to SD Wheel, and specifically SD Wheel employees located within this judicial district.

**Answer**: Logfret denies making representations to any SD Wheel employees. Logfret admits making statements to certain SD Wheel employees. Logfret lacks sufficient knowledge or information regarding those employees to form a belief as to the location or State citizenship of any of those employees. Logfret denies any remaining allegations of this paragraph.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1)–(2). Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in this judicial district because Logfret is deemed to reside in Wisconsin pursuant to 28 U.S.C. § 1391(c)(2). Additionally, venue is proper because a substantial part of the events and omissions occurred in this judicial district, in particular

4

a substantial part of the omissions, statements, and misrepresentations were made to SD Wheel's employees in this judicial district.

**Answer**: Logfret denies that it engaged in any misrepresentations or omissions to SD Wheel's Wisconsin based employees. Logfret admits that it engaged in electronic communications with certain employees of SD Wheel regarding SD Wheel imports. Logfret lacks knowledge or information sufficient to form a belief as to the locations of those SD Wheel employees. Logfret denies any remaining allegations of this paragraph.

## FACTUAL ALLEGATIONS

### I.    Section 301 Duty Refund Factual Allegations

18.    Since at least 2014, SD Wheel hired Logfret to transport and import freight. The freight primarily consisted of parts that SD Wheel imported from manufacturers in China.

**Answer**: Logfret admits that it entered into an agreement with SD Wheel on approximately November 12, 2014 to assist SD Wheel with certain activities related to international shipping, which consisted primarily of parts SD Wheel was importing from China. Logfret denies any remaining allegations of this paragraph.

19.    On November 12, 2014, SD Wheel executed a Power of Attorney for Customs and Forwarding Agent ("POA"), under which Logfret would act as SD Wheel's authorized agent.

**Answer**: Admitted.

20.    Specifically, the POA provided that on behalf of SD Wheel, Logfret may:

Make, endorse, sign, declare, or swear to any customs entry, withdrawal, declaration, certificate, bill of lading, carnet, shipper's export declaration, commercial invoice, insurance certificate, draft or any other document(s) required by law or regulation in connection with the exportation, importation or transportation of any merchandise in or through the customs territory, shipped or cosigned by or to said grantor;

Perform any act or condition which may be required by law or regulation of the Department of Commerce, Department of Treasury, Census Bureau, or any other governmental agency in connection with such merchandise deliverable to or from said grantor; to receive or ship any merchandise;

. . .

Authorize other Customer Brokers duly licensed within the territory to act as grantor's agent; to receive, endorse and collect checks issued for Customs duty refunds in grantor's name drawn on the Treasurer of the United States or otherwise

5

on behalf of grantor, if the grantor is a nonresident of the Territory, to accept service of process on behalf of the grantor. Grantor acknowledges receipt of; LOGFRET, INC. Terms and Conditions of Service governing all transactions between the Parties.

And generally, to transact Customs business, including filing of claims or protests under Section 514 of the Tariff Act of 1930, or pursuant to other laws of the Territories, in which said grantor is or may be concerned or interested and which may properly be transacted or performed by agent and attorney . . . .

**Answer**: Logfret Admits that the referenced Power of Attorney Agreement contains the language cited in this paragraph. Logfret denies any allegation that the cited language contains the full agreement between the parties as it relates to the matters referenced in the Complaint. The Power of Attorney, in its complete form, is attached to this Answer as Exhibit 1 and incorporated in this answer.

21.     Since executing the POA, Logfret has acted as SD Wheel's authorized agent in handling the importation and transportation of freight. Included in these actions, Logfret would pursue duty refunds for which SD Wheel was eligible.

**Answer**: Logfret admits that it has sometimes acted as SD Wheel's authorized agent in the importation and handling of freight under the referenced Power of Attorney Agreement subject to all Terms and Conditions thereof. Logfret denies any remaining allegations of this paragraph.

22.     When goods are imported into the United States, an entry is filed with U.S. Customs and Border Protection ("CBP") to enter goods into U.S. Commerce. Estimated import duties, taxes, and fees are deposited within ten (10) business days after time of entry.

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

23.     Typically, within 314 days after entry, U.S. Customs will liquidate the entry by determining the final amount of duties, taxes, and fees. If the final amount of duties, taxes, and fees is equal to the estimated duties deposited or within a net difference of less than $20, CBP shall endorse the entry as entered. If the net difference is $20 or greater, CBP shall issue a bill to the importer for the net difference.

6

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

24.     An importer has 180 days from the date of liquidation to file a protest (CBP Form 19) on an entry.

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

25.     If a company protested the entry, the liquidation period is extended by a year, for up to four years.

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

26.     In July 2018, the United States imposed tariffs on Chinese imports under the Trade Act of 1974, known as "Section 301 Tariffs."

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

27.     Throughout late 2018 and early 2019, SD Wheel imported parts which were subject to the Section 301 Tariffs, which SD Wheel paid to U.S. Customs as it imported certain parts it used in its regular course of business.

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret admits the remaining allegations of this paragraph.

28.     When the Section 301 Tariffs were implemented, the Office of the United States Trade Representative ("USTR") also implemented an exclusion process. In 2019, the USTR began issuing a series of lists of goods which would be excluded from the tariffs. These exclusions were meant to be retroactive to tariffs paid as early as July 2018. Ultimately, four lists were issued.

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

29.     If a company paid a Section 301 Tariff on an item that was later identified on one of the exclusionary lists (Lists 1–4), the company could seek a refund of the tariff paid (a "Duty Refund").

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

30.     However, a company could only seek a Duty Refund either prior to liquidation or within 180 days after the entry had been liquidated.

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

31.     On November 19, 2019, SD Wheel representatives sent three emails, labeled "Duty Refund Email #1," "Duty Refund Email #2," and "Duty Refund Email #3" (collectively "Duty Refund Emails") to Logfret representatives.

**Answer**: Admitted.

32.     In each email, SD Wheel identified import entries by container number and provided all the documents necessary to begin the refund process.

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret admits the remaining allegations of this paragraph.

33.     Between the three emails, 42 container numbers were identified which corresponded to 31 entries.

**Answer**: Admitted.

34.     Fifteen container numbers (ten entries) were identified in Duty Refund Email #1.

8

**Answer**: Admitted.

    35.    Sixteen container numbers (eleven entries) were identified in Duty Refund Email #2.

**Answer**: Admitted.

    36.    Eleven container numbers (ten entries) were identified in Duty Refund Email #3.

**Answer**: Admitted.

    37.    Each entry had its own import date, liquidation date, and protest date.

**Answer**: Logfret admits that each entry had an import date, though some dates were duplicated. Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

    38.    The 21 entries identified in Duty Refund Emails # 2 and 3 are the entries and refunds at issue in this dispute and are identified below:

| Shipment Entry # | Import Date | Date Duty Paid to U.S. Customs | Liquidation Date | Protest Deadline Date | Duty Eligible for Exclusion | Duty Refund Email |
|---|---|---|---|---|---|---|
| 045-0448407-4 | 02/15/19 | 03/14/19 | 01/24/20 | 07/22/20 | $5,687.50 | 2 |
| 045-0449963-5 | 02/19/19 | 03/11/19 | 01/24/20 | 07/22/20 | $4,153.00 | 2 |
| 045-0448616-0 | 02/25/19 | 03/22/19 | 02/07/20 | 08/05/20 | $5,180.00 | 2 |
| 045-0450738-7 | 03/16/19 | 04/01/19 | 02/14/20 | 08/12/20 | $5,007.00 | 2 |
| 045-0451491-2 | 03/28/19 | 04/15/19 | 02/28/20 | 08/26/20 | $4,301.20 | 2 |
| 045-0452783-1 | 03/29/19 | 05/09/19 | 03/20/20 | 09/16/20 | $10,164.60 | 2 |
| 045-0453850-7 | 05/10/19 | 05/28/19 | 04/10/20 | 10/07/20 | $5,545.90 | 2 |
| 045-0455261-5 | 06/01/19 | 06/14/19 | 05/01/20 | 10/28/20 | $28,585.25 | 2 |
| 045-0455641-8 | 06/06/19 | 06/24/19 | 05/08/20 | 11/04/20 | $30,411.00 | 2 |

9

| | | | | | | |
|---|---|---|---|---|---|---|
| 045-0456717-5 | 06/27/19 | 07/19/19 | 06/05/20 | 12/02/20 | $40,808.00 | 2 |
| 045-0456776-1 | 07/02/19 | 07/26/19 | 06/12/20 | 12/09/20 | $14,013.50 | 2 |
| 045-0457035-1 | 07/02/19 | 07/26/19 | 06/12/20 | 12/09/20 | $13,987.75 | 3 |
| 045-0458434-5 | 07/09/19 | 08/01/19 | 06/12/20 | 12/09/20 | $13,618.25 | 3 |
| 045-0458778-5 | 07/17/19 | 08/15/19 | 06/26/20 | 12/23/20 | $13,447.50 | 3 |
| 045-0458978-1 | 07/29/19 | 08/21/19 | 07/03/20 | 12/30/20 | $26,679.00 | 3 |
| 045-0460618-9 | 08/16/19 | 09/11/19 | 07/24/20 | 01/20/21 | $12,236.00 | 3 |
| 045-0462218-6 | 09/20/19 | 10/10/19 | 08/21/20 | 02/17/21 | $14,625.25 | 3 |
| 045-0462639-3 | 09/27/19 | 10/10/19 | 08/21/20 | 02/17/21 | $14,001.75 | 3 |
| 045-0462852-2 | 10/01/19 | 10/25/19 | 09/11/20 | 03/10/21 | $12,502.00 | 3 |
| 045-0462784-7 | 10/08/19 | 10/18/19 | 09/04/20 | 03/03/21 | $16,291.00 | 3 |
| 045-0463354-8 | 10/23/19 | 11/05/19 | 09/18/20 | 03/17/21 | $15,032.25 | 3 |

**Answer**: Logfret admits that the Shipment Entry numbers and import dates listed in this paragraph are accurate. Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

39. After sending the Duty Refund Emails, SD Wheel emailed Logfret and informed them that they would need to submit the duty refund paperwork for entries that qualified for the Section 301 exclusions.

**Answer**: Denied.

40. SD Wheel also informed Logfret that it provided three separate emails which contained the shipment information for all the relevant entries.

**Answer**: Admitted.

10

41.     On the evening of November 19, 2019, Logfret responded to Duty Refund Email #3. Logfret indicated that it had received the information, sent the information to the broker, and that Logfret would provide more details as soon as available.

**Answer**: Logfret admits that it responded to the Duty Refund Emails, acknowledged receipt, and stated that they had been forwarded to the appropriate entity. Logfret denies any remaining allegations of this paragraph.

42.     At the time the Duty Refund Emails were sent, SD Wheel was eligible for Section 301 Refunds on all thirty-one identified entries, which would have amounted to refunds totaling $306,277.70.

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

43.     Likewise, when the Duty Refund Emails were sent, the liquidation dates and protests deadline dates had not yet occurred.

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

44.     Several days later, Logfret asked SD Wheel to confirm that there was an applicable Section 301 Refund for the entries.

**Answer**: Denied.

45.     By November 25, 2019, SD Wheel confirmed that its entries were eligible for a Section 301 Refund.

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret lacks information or knowledge sufficient to form a belief about the remaining allegations of this paragraph and denies on that basis.

46.     After several months without hearing anything further as to the status of the refunds, SD Wheel began reaching out to Logfret again via several phone calls.

11

**Answer**: Denied.

47. On March 27, 2020, Logfret confirmed that "all of them [the duty refunds] have been submitted" and that it "will take months" to receive the refund and maybe longer due to CoVid-19.

**Answer**: Denied.

48. After March 2020, SD Wheel continued to follow up on the status of the Section 301 Refunds with Logfret.

**Answer**: Denied.

49. On August 11, 2020, SD Wheel's new Director of Logistics reached out to Logfret asking Logfret for the historical data it had for SD Wheel, including historical import data.

**Answer**: Logfret admits that SD Wheel's director of logistics emailed Logfret on August 11, 2020. Logfret denies any remaining allegations of this paragraph.

50. SD Wheel's Director did not receive any historical import data in response to her August 11, 2020, email.

**Answer**: Denied.

51. On September 30, 2020, SD Wheel's Director reached out to Logfret again and explicitly asked for the last five years of import and export data.

**Answer**: Denied.

52. She also asked for documentation on all the duty refunds, duty protests, and post summary corrections ("PCSs") Logfret or its broker had filed on behalf of SD Wheel.

**Answer**: Denied.

53. SD Wheel's Director received no documentation or information related to the last five years of import/export data or duty refunds, duty protests, or PSCs filed on behalf of SD Wheel.

12

**Answer**: Denied.

54.    On October 5, 2020, SD Wheel's Director followed up on her September 30, 2020, email and asked to meet with someone from Logfret to discuss the issues raised in her email.

**Answer**: Denied.

55.    In response, Logfret stated "we will get in touch with you and go over items."

**Answer**: Denied.

56.    Despite Logfret's response, it did not provide SD Wheel's Director with the documentation she requested, nor did it provide her with an update on the status of any duty refunds, duty protests, or PSCs.

**Answer**: Denied.

57.    On January 11, 2021, SD Wheel's Director reached out again and asked for access to Logfret's system so that she could pull SD Wheel's import and export information.

**Answer**: Denied.

58.    SD Wheel's Director was repeatedly told that Logfret was working on it in follow-up correspondence; however, even two months later, she still did not have access.

**Answer**: Denied.

59.    On March 2, 2021, SD Wheel's new Trade Compliance Manager reached out to Logfret seeking more information about Logfret's communications and recordkeeping.

**Answer**: Denied.

60.    On March 9, 2021, SD Wheel's Manager detailed SD Wheel's expectations about the import entry, entry correction, and export filing documentation that Logfret was expected to provide when Logfret was acting as SD Wheel's agent in handling all such documentation.

**Answer**: Denied.

13

61.     Ultimately, because Logfret failed to respond or provide the information, SD Wheel's Manager reached out directly to the broker Logfret had used to process the Section 301 Refunds and duty process.

**Answer**: Logfret lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 61.

62.     Upon information and belief, although Logfret provides brokerage services for their other customers, Logfret elected to outsource the brokerage for SD Wheel's account. Logfret owns the relationship with the third-party broker. SD Wheel did not communicate directly with the third-party broker. Rather, SD Wheel communicated with Logfret. Logfret was then responsible with either conducting the brokerage activities themselves or relaying SD Wheel's communications to the third-party broker that it employed.

**Answer**: Denied.

63.     On March 25, 2021, the broker explained that it only received the shipment information from Duty Refund Email #1.

**Answer**: Logfret lacks knowledge or information sufficient to form a belief about the truth of the allegations.

64.     Unbeknownst to SD Wheel, Logfret only submitted the information from Duty Refund Email #1 to the broker to be processed and SD Wheel only received its Section 301 Refunds for those entries.

**Answer**: Logfret denies the allegations regarding the information submitted to the broker and lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding what SD Wheels received.

65.     The broker then explained that because it had not received the other files, the refunds could not be sought because the other entries had all been liquidated and were past the time frame in which a protest could be filed.

14

**Answer**: Logfret lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 65.

66.     The Duty Refund Emails #2 and 3 identified 21 entries for which SD Wheel was eligible for approximately $306,277.70 in refunds.

**Answer**: Logfret admits that Duty Refund Emails #2 and #3 identified 21 entries. Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

67.     Because the duties paid on the entries identified in Duty Refund Emails #2 and 3 were past the protestable period, SD Wheel could not seek a Section 301 Refund for those entries and, thus, SD Wheel lost $306,277.70 in refunds for which it was eligible.

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

## II.     Demurrage Factual Allegations

68.     In December 2020, Logfret was acting as a broker on behalf of SD Wheel and was responsible for handling the customs clearance process for a shipment ("December 2020 Shipment").

**Answer**: Logfret admits that it provided certain services for SD Wheels regarding the December 2020 shipment. Logfret denies any remaining allegations of this paragraph.

69.     As the broker, Logfret was responsible for monitoring the import process and to ensure it had all necessary documentation to file for entry when the shipment was received.

**Answer**: Denied.

70.     If the shipment did not have all the necessary information, it was Logfret's responsibility to acquire that information in a timely manner.

**Answer**: Denied.

15

71. Additionally, it was Logfret's responsibility to file the entry information before the shipment arrived at the port of entry so that it could be processed and released.

**Answer**: Denied.

72. On December 14, 2020, Logfret received the arrival notice for the December 2020 Shipment.

**Answer**: Logfret admits that it was copied on an email between OGL America and SD Wheel which contained a document purporting to be the arrival notice. Logfret denies any remaining allegations of this paragraph.

73. Upon information and belief, Logfret asserts that the arrival notice did not contain sufficient information to complete the entry documentation.

**Answer**: Admitted.

74. One container on the December 2020 shipment arrived at the port of entry on December 23, 2020, the other container on December 24, 2020.

**Answer**: Denied.

75. Upon information and belief, Logfret waited until at least December 30 to follow up with the shipper regarding the information Logfret alleges was missing which prevented it from timely completing the entry documentation.

**Answer**: Denied.

76. On December 30, 2020, the December 2020 Shipment was released; however, SD Wheel's warehouse could not take the December 2020 Shipment until after the New Year's holiday.

**Answer**: Logfret admits that the December 2020 shipment was released on approximately December 30, 2020. Logfret lacks knowledge or information sufficient to form a belief regarding the remaining allegations of this paragraph.

16

77. Because of the delays in processing the entry documentation and moving the shipment, SD Wheel incurred $7,700 in demurrage fees.

**Answer**: Denied.

### III. Missing Import and Export Documentation

78. As SD Wheel's agent, Logfret was required to complete and maintain import, export, and custom documentation on behalf of SD Wheel.

**Answer**: Denied.

79. In March 2021, SD Wheel's Manager identified several import and post entry documentation and export documentation Logfret was responsible for creating and maintaining for SD Wheel.

**Answer**: Denied.

80. By March 15, 2021, SD Wheel's Manager identified several specific entries for which SD Wheel did not have all required import documentation.

**Answer**: Denied.

81. On March 29, 2021, SD Wheel's Manager sent another communication to Logfret to follow-up because there had been no response to her request seeking this documentation.

**Answer**: Denied.

82. Sometime in April 2021, SD Wheel was finally provided with access to Logfret's online documentation system in which it maintains its import and export documentation.

**Answer**: Denied.

83. Upon gaining access, SD Wheel discovered that Logfret was missing documentation that it was required to complete and maintain on behalf of SD Wheel, including but not limited to the following important documentation: post entry documentation (when

17

applicable), revised CBP Form 7501 (when applicable), Cargo Release (with proof of release annotation/indication), PGA print screen or disclaimer screenshot (when applicable), PGA Forms (when applicable), copies of any correspondence relating to the post entry action, commercial invoices rated per 19 C.F.R. § 141.90, and commercial invoice and pages numbered per 19 C.F.R. § 141.86(h).

**Answer**: Denied.

84. Likewise, Logfret was missing the following export documentation that it was required to complete on behalf of SD Wheel, including but not limited to: the Electronic Export Information ("EEI") file and proof of export.

**Answer**: Denied.

85. Logfret is required to maintain this import and export documentation for at least 5 years. *See* 19 C.F.R. §§ 163.1(a), 163.1(e), 163.2(a)(1)(i); 15 C.F.R. §§ 30.10(a), 762.1(b), and 762.2(a).

**Answer**: Denied.

86. Despite numerous requests by SD Wheel's Director and Manager for this information since late 2020, Logfret has failed to provide the legally required import and export documentation it is required to maintain on behalf of SD Wheel.

**Answer**: Denied.

87. On May 7, 2021, by and through counsel, SD Wheel sent a demand letter to Logfret requesting to be made whole for the lost Section 301 Refunds and demurrage charges from the December 2020 Shipment. SD Wheel also demanded access to its import and export documentation.

**Answer**: Denied.

88. Logfret provided access to its on-line document system, however, Logfret did not otherwise respond. Even with access to the system, SD Wheel does not have all the required import and export documentation.

**Answer**: Denied.

89. On June 8, 2021, by and through counsel, SD Wheel sent a follow-up correspondence to Logfret requesting reimbursement of the Section 301 Refunds and demurrage charges. SD Wheel also demanded that Logfret provide full access to all documentation or confirm that such documentation does not exist. SD Wheel asked Logfret to respond and indicated that if no responses were received, it would pursue all legal remedies, including the filing of a lawsuit.

**Answer**: Denied.

90. As of the date this Complaint has been filed, Logfret has not responded.

**Answer**: Denied.

## FIRST CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

91. SD Wheel repeats and realleges the allegations of Paragraphs 1 through 90 above as if fully set forth herein.

**Answer**: Logfret repeats and restates the answers to Paragraphs 1 through 90 above as if fully set forth herein.

92. The POA executed by SD Wheel authorized Logfret to act as its agent.

**Answer**: Admitted.

93. One of Logfret's responsibilities as agent was to submit the Section 301 Duty Refunds to which SD Wheel was entitled.

**Answer**: Denied.

94.     On November 19, 2019, SD Wheel sent the three Duty Refund Emails to Logfret containing the information and documentation necessary to submit the Section 301 Refunds on behalf of SD Wheel.

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret admits that SD Wheel sent three Duty Refund Emails to Logfret on November 19, 2019 and that those emails contained information relevant to the Section 301 Refunds. Logfret denies the remaining allegations of this paragraph.

95.     On November 19, 2019, Logfret acknowledged receipt of the Duty Refund Email #3 and responded that it had submitted the material to its broker.

**Answer**: Logfret admits that, on November 19, 2019, Logfret acknowledged receipt of the Duty Refund Email #3 and responded that it had submitted the material to the appropriate entity. Logfret denies any remaining allegations of this paragraph.

96.     Logfret selected the broker it worked with and controlled communication to the broker.

**Answer**: Denied.

97.      By email, in March 2020, Logfret confirmed that all the Section 301 Duty Refunds had been submitted for processing.

**Answer**: Admitted.

98.     Unbeknownst to SD Wheel, Logfret did not submit all the containers and their documentation to the broker to be processed.

**Answer**: Denied.

99.     Instead, Logfret only submitted Duty Refund Email #1 and the containers identified therein to the broker; therefore, SD Wheel only received a Section 301 Refund for the containers contained within Email #1.

**Answer**: Denied.

20

100.    It was not until March 2021 that SD Wheel discovered that Logfret had failed to submit Duty Refund Emails #2 and 3 to the broker for processing.

**Answer**: Logfret is without knowledge or information sufficient to form a belief as to SD Wheel's understanding of the events in question. Logfret denies that it failed to submit Duty Refund Emails #2 and #3. Logfret denies the remaining allegations of this paragraph.

101.    At that point, it was too late for SD Wheel to submit Section 301 Refunds for the containers identified within Duty Refund Emails # 2 and 3 because the entries had been liquidated and it was past the allowable time frame to file a protest.

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

102.    The containers identified within Duty Refund Emails # 2 and 3 were eligible for Section 301 Refunds totaling $306,277.70.

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

103.    Around August 11, 2020, SD Wheel's Director asked Logfret for all historical data, including import data.

**Answer**: Denied.

104.    If Logfret had provided the import data on or around August 11, 2020, Logfret's failure to forward the other two emails would have been identified.

**Answer**: Logfret denies that it failed to forward Duty Email #2 and #3 to the appropriate entity. Logfret Denies the remaining allegations of this paragraph.

105.    If Logfret's error had been caught on August 11, 2020, only three of the 21 remaining eligible entries identified in Duty Refund Emails # 2 and 3 would have been liquidated and past the allowable period to file a protest. SD Wheel would have been able to file protests for Section 301 Duty Refunds, and liquidation protests, if necessary, for the remaining 18 eligible

21

entries, which would have still totaled $291,257.20. SD Wheel would have only lost $15,020.50 in eligible refunds.

**Answer**: Logfret denies that it made any error regarding Duty Refund Emails #2 and #3. Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

106.    On September 30, 2020, and October 5, 2020, SD Wheel's Director repeated her request for all import data and explicitly asked Logfret what duty refunds and protests Logfret's broker had filed for SD Wheel, as well as for all corresponding documentation.

**Answer**: Denied.

107.    If Logfret had responded to this request and identified the duty refunds and protests that the broker had filed, Logfret's failure to forward Duty Refund Emails # 2 and 3 would have been discovered.

**Answer**: Logfret denies that it made any error regarding Duty Refund Emails #2 and #3. Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

108.    Alternatively, if Logfret had provided SD Wheel's Director with all the documents for the duty refunds being processed by the broker, SD Wheel could have identified the 21 entries that the broker was not processing.

**Answer**: Logfret denies that it made any error regarding Duty Refund Emails #2 and #3. Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

109.    If Logfret had responded and provided SD Wheel with the information it sought by September 30 or October 5, 2020, only six of the 21 entries would have been liquidated and past the allowable time frame to file a protest. SD Wheel would have been able to file protests for Section 301 Duty Refunds for the remaining fifteen entries. SD Wheel would still have been able

22

to seek Section 301 Refunds totaling around $271,784.40. SD Wheel would have only lost $34,493.30 in eligible refunds.

**Answer**: Logfret denies that it made any error regarding Duty Refund Emails #2 and #3. Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

110. SD Wheel's Director reached out again around January 11, 2021, for access to Logfret's system.

**Answer**: Denied.

111. Likewise, around March 9, 2021, SD Wheel's Manager asked for the post entry information, including protest information.

**Answer**: Denied.

112. If either SD Wheel's Director or Manager had received the information they sought for SD Wheel, it would have been able to recover a few of the remaining eligible refunds.

**Answer**: Logfret denies that it made any error regarding Duty Refund Emails #2 and #3. Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

113. Because SD Wheel did not receive the information from Logfret, SD Wheel was forced to ultimately reach out for such information from the broker, who provided it on March 25, 2021.

**Answer**: Logfret lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 113.

114. By March 25, 2021, all the entries identified in Duty Refund Emails #2 and 3 were liquidated and past the protestable period. Therefore, SD Wheel lost refunds in the amount of $306,277.70.

**Answer**: Logfret denies any specific interpretation of Title 19 U.S.C. and any of its sections or subsections as set forth by Plaintiff in this paragraph. Logfret denies any remaining allegations of this paragraph.

23

115.    As SD Wheel's agent, Logfret occupied a position of trust and confidence with respect to SD Wheel. Therefore, Logfret owed SD Wheel a duty to exercise good faith, reasonable diligence, and standard skill in the performance of its duties.

**Answer**: Paragraph 115 states a legal conclusion to which no response is required.  To the extent there are any factual allegations in paragraph 115 those allegations are denied.

116.    Logfret had a duty to act with absolute fidelity and loyalty to the interests of SD Wheel.

**Answer**: Paragraph 116 states a legal conclusion to which no response is required.  To the extent there are any factual allegations in paragraph 116 those allegations are denied.

117.    Logfret had a duty to keep SD Wheel informed with respect to, and make full disclosure to SD Wheel of, all material facts that affect the subject of Logfret's agency.

**Answer**: Paragraph 117 states a legal conclusion to which no response is required.  To the extent there are any factual allegations in paragraph 117 those allegations are denied.

118.    Logfret had a duty to discharge its duties faithfully, so as to protect and serve the best interests of SD Wheel.

**Answer**: Paragraph 118 states a legal conclusion to which no response is required.  To the extent there are any factual allegations in paragraph 118 those allegations are denied.

119.    Logfret breached its duty to SD Wheel by failing to process all the Section 301 Refunds that SD Wheel had requested.

**Answer**: Denied.

120.    Logfret breached its duty to SD Wheel by informing SD Wheel that all the Section 301 Refunds had been processed when they had not been.

**Answer**: Denied.

121.    Logfret breached its duty by failing to act in SD Wheel's interest in processing the Section 301 Refunds.

**Answer**: Denied.

122.    Every time Logfret failed to provide the information SD Wheel had requested, Logfret breached its duty to SD Wheel.

**Answer**: Denied.

123.    Because of Logfret's breach of duty, SD Wheel lost $306,277.70 in refunds to which it was entitled.

**Answer**: Denied.

124.    As such, SD Wheel has been damaged by Logfret's breach of duty.

**Answer**: Denied.

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED CONTRACT

125.    SD Wheel repeats and realleges the allegations of Paragraphs 1 through 124 above as if fully set forth herein.

**Answer**: Logfret repeats and restates the answers to Paragraphs 1 through 124 above as if fully set forth herein.

126.    SD Wheel and Logfret had an implied contract that Logfret would process the Section 301 Refunds.

**Answer**: Denied.

127.    This implied contract was created by SD Wheel's hiring of Logfret to manage the import process and SD Wheel's execution of the POA.

**Answer**: Denied.

128.    Logfret received compensation for managing the import process.

**Answer**: Denied.

25

129.     Logfret breached this implied contract by failing to process the Section 301 Refunds for the containers identified in Duty Refund Emails #2 and 3.

**Answer**: Denied.

130.     SD Wheel was damaged by this breach of implied contract by losing refunds it was entitled to worth $306,277.70.

**Answer**: Denied.

### THIRD CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATIONS

131.     SD Wheel repeats and realleges the allegations of Paragraphs 1 through 130 above as if fully set forth herein.

**Answer**: Logfret repeats and restates the answers to Paragraphs 1 through 130 above as if fully set forth herein.

132.     On the evening of November 19, 2019, Logfret employee Dianne Smith told SD Wheel, in response to Duty Refund Email #3: "Received we have sent to broker will advise further details as soon as available."

**Answer**: Denied.

133.     In response to an email asking if there was any news on the duty refunds, Logfret employee Dianne Smith said: "talked with the broker, all of them have been submitted it will take months now due to the corvid 19 [sic] it may even be further long".

**Answer**: Denied.

134.     These two statements, that the Section 301 Refunds have been submitted, are statements of fact.

**Answer**: Denied.

135.     These representations were untrue.

26

**Answer**: Denied.

136. In September and October 2020, SD Wheel's Director asked Logfret, "what exclusions/protests/PSCs has the broker filed on our behalf?"

**Answer**: Denied.

137. Logfret, as SD Wheel's agent, had a duty to speak truthfully and to respond with the information requested.

**Answer**: Paragraph 137 states a legal conclusion to which no response is required. To the extent there are any factual allegations in paragraph 137 those allegations are denied.

138. Logfret's silence is a representation of fact.

**Answer**: Paragraph 138 states a legal conclusion to which no response is required. To the extent there are any factual allegations in paragraph 138 those allegations are denied.

139. Logfret's silence was untrue.

**Answer**: Denied.

140. Logfret was negligent in making these statements and/or omissions.

**Answer**: Denied.

141. Logfret failed to exercise ordinary care when making these statements.

**Answer**: Denied.

142. Logfret was the party that controlled communications to the broker.

**Answer**: Denied.

143. Logfret knew or should have known which information it provided to the broker.

**Answer**: Denied.

144. It was reasonable for Logfret to foresee that its misrepresentations would place SD Wheel at an unreasonable risk of damage.

**Answer**: Denied.

27

145.    SD Wheel relied on the misrepresentations and was damaged because of the misrepresentations.

**Answer**: Denied.

### FOURTH CAUSE OF ACTION
### NEGLIGENCE

146.    SD Wheel repeats and realleges the allegations of Paragraphs 1 through 145 above as if fully set forth herein.

**Answer**: Logfret repeats and restates the answers to Paragraphs 1 through 145 above as if fully set forth herein.

147.    Logfret acted as SD Wheel's broker in handling the customs clearance for the December 2020 Shipment.

**Answer**: Denied.

148.    As SD Wheel's broker, Logfret had a duty to act with ordinary care and skill in the importation process.

**Answer**: Paragraph 148 states a legal conclusion to which no response is required. To the extent there are any factual allegations in paragraph 148 those allegations are denied.

149.    As the broker, Logfret was responsible for managing and monitoring the import process.

**Answer**: Denied.

150.    As the broker, Logfret was also responsible for ensuring it had all information necessary to file the entry documentation and to do so in a timely manner.

**Answer**: Denied.

151.    As the broker, Logfret should have reviewed the information it had for the entry documentation and sought out any missing information before the shipment was received, so that the entry documentation could be filed before the shipment was received at the port of entry.

28

**Answer**: Denied.

152.    Logfret had a duty to SD Wheel to meet industry standards in its actions as broker.

**Answer**: Paragraph 152 states a legal conclusion to which no response is required.  To the extent there are any factual allegations in paragraph 152 those allegations are denied.

153.    Logfret breached this duty by failing to ensure it had the information to complete the entry documentation.

**Answer**: Denied.

154.    Logfret breached its duty by failing to act in a timely manner.

**Answer**: Denied.

155.    Because of Logfret's actions, the December 2020 Shipment incurred demurrage charges of $7,700 which were assessed against SD Wheel.

**Answer**: Denied.

156.    Because of Logfret's actions, SD Wheel has been damaged.

**Answer**: Denied.

**FIFTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**

157.    SD Wheel repeats and realleges the allegations of Paragraphs 1 through 156 above as if fully set forth herein.

**Answer**: Logfret repeats and restates the answers to Paragraphs 1 through 145 above as if fully set forth herein.

158.    As SD Wheel's agent, Logfret had a duty to exercise good faith, reasonable diligence, and act with standard skill in Logfret's performance of its duties.

**Answer**: Paragraph 158 states a legal conclusion to which no response is required.  To the extent there are any factual allegations is paragraph 158 those allegations are denied.

159.     Logfret had a duty to keep SD Wheel informed with respect to, and make full disclosure to SD Wheel of, all material facts that affect the subject of Logfret's agency.

**Answer**: Paragraph 159 states a legal conclusion to which no response is required.  To the extent there are any factual allegations is paragraph 159 those allegations are denied.

160.     Logfret had a duty to consult with SD Wheel on emergency developments, if an opportunity exists to do so.

**Answer**: Paragraph 160 states a legal conclusion to which no response is required.  To the extent there are any factual allegations is paragraph 160 those allegations are denied.

161.     Logfret had a duty to exercise the skill and care standard for such employment in the community.

**Answer**: Paragraph 161 states a legal conclusion to which no response is required.  To the extent there are any factual allegations is paragraph 161 those allegations are denied.

162.     Logfret had a duty to discharge its duties faithfully, so as to protect and serve the best interests of SD Wheel.

**Answer**: Paragraph 162 states a legal conclusion to which no response is required.  To the extent there are any factual allegations is paragraph 162 those allegations are denied.

163.     Logfret failed to properly monitor and manage the December 2020 Shipment.

**Answer**: Denied.

164.     Logfret failed to exercise ordinary care and skill in the importing process.

**Answer**: Denied.

165.     Logfret failed to protect and serve the best interest of SD Wheel.
**Answer**: Denied.

166.     In doing so, Logfret breached its fiduciary duty to SD Wheel.

**Answer**: Denied.

167.     Because of Logfret's breach of duty, SD Wheel was charged a $7,700 demurrage charge.

30

**Answer**: Denied.

168. Because of Logfret's breach of duty, SD Wheel was damaged.

**Answer**: Denied.

## SIXTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

169. SD Wheel repeats and realleges the allegations of Paragraphs 1 through 168 above as if fully set forth herein.

**Answer**: Logfret repeats and restates the answers to Paragraphs 1 through 168 above as if fully set forth herein.

170. As SD Wheel's agent, Logfret had a duty to complete all import and export documentation required by law or regulation.

**Answer**: Denied.

171. As SD Wheel's agent, Logfret also had a duty to maintain for at least 5 years all import and export documentation required by law or regulation.

**Answer**: Denied.

172. Logfret has failed to complete and maintain all necessary import documentation as required by law or regulation, including failing to complete and/or maintain the following categories of documents:

    a. post entry documentation (when applicable);

    b. revised CBP Form 7501 (when applicable);

    c. Cargo Release (with proof of release annotation/indication);

    d. PGA print screen or disclaimer screenshot (when applicable);

    e. PGA Forms (when applicable);

    f. copies of any correspondence relating to the post entry action;

    g. commercial invoices rated per 19 C.F.R. § 141.90; and

31

h.      commercial invoice and pages numbered per 19 C.F.R. § 141.86(h).

**Answer**: Denied.

173.    Logfret has failed to complete and maintain all necessary export documentation as required by law or regulation, including failing to complete and/or maintain the following categories of documents:

a.      Electronic Export Information ("EEI") file; and

b.      proof of export.

**Answer**: Denied.

174.    Logfret breached its duty to SD Wheel by failing to complete and maintain all such documentation.

**Answer**: Denied.

175.    SD Wheel, as the principal, is entitled to copies of all such documentation.

**Answer**: Denied.

176.    SD Wheel is ultimately responsible for having this documentation and could face penalties and/or fines for not maintaining it.

**Answer**: Denied.

**SEVENTH CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**

177.    SD Wheel repeats and realleges the allegations of Paragraphs 1 through 176 above as if fully set forth herein.

**Answer**: Logfret repeats and restates the answers to Paragraphs 1 through 176 above as if fully set forth herein.

178.    SD Wheel and Logfret had an implied contract that Logfret would create and maintain all documents necessary for SD Wheel's imports and exports as required by law and regulation.

**Answer**: Denied.

179.    This implied contract was created by SD Wheel's hiring of Logfret to manage the import process and SD Wheel's execution of the POA.

**Answer**: Denied.

180.    Logfret received compensation for managing the import process.

**Answer**: Denied.

181.    Logfret breached this implied contract by failing to create and maintain all such necessary information.

**Answer**: Denied.

182.    These documents are legally required documents which only Logfret can create.

**Answer**: Denied.

183.    SD Wheel lacks the information necessary to complete these documents as Logfret managed the relevant import or export process.

**Answer**: Denied.

184.    Moreover, SD Wheel can suffer severe consequences if it is audited by a governmental entity and fails to provide these legally required documents.

**Answer**: Denied.

185.    SD Wheel is entitled to specific performance of the implied contract by a Court order requiring Logfret to create and/or produce all missing documentation.

**Answer**: Denied.

33

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (Limitation of Liability)

Pursuant to the contractual terms agreed to between Logfret and SD Wheel which control the transactions at issue in the Complaint and are attached to this Answer and Affirmative Defenses as Exhibit 2, any liability on the part of Logfret for any loss, damage, expense or delay to the goods resulting from the negligence or other fault of Logfret shall be limited to an amount equal to the lesser of fifty dollars ($50.00) per entry or shipment or the fee(s) charged for the services. Further, Logfret shall, in no event, be liable for consequential, punitive, statutory or special damages in excess of the monetary limit provided for above. (Exhibit 2 Section 8(a), (d)).

### SECOND AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

SD Wheel was aware of some or all of the information necessary to mitigate any damages alleged in the Complaint at a time when SD Wheel was capable of taking action to mitigate and failed to do so. As such, some or all of the alleged damages are a result of SD Wheel's actions or failure to act.

### THIRD AFFIRMATIVE DEFENSE
### (Prevention of Performance)

Any duty to SD Wheel which Logfret is alleged to have left unperformed was done so only because Plaintiff's actions delayed or otherwise prevented said performance. If not for the actions of SD Wheel in this matter, Logfret would have been able to complete those duties with no or less damage to SD Wheel. As a result, SD Wheel is responsible for all or some of the alleged damages.

34

## FOURTH AFFIRMATIVE DEFENSE
### (Failure of Condition Precedent)

Some or all of Logfret's duties to SD Wheel, as alleged in the Complaint, were contingent upon the actions of SD Wheel or a third party. Such actions never took place or were delayed, and that delay or nonperformance was the cause of the alleged damages.

## FIFTH AFFIRMATIVE DEFENSE
### (Fault of Third Parties)

Some or all of the alleged damages were the result of the actions of parties not joined to this matter, which were performed under contractual agreements to which Logfret is not a party.

## SIXTH AFFIRMATIVE DEFENSE
### (Circuity of Action)

Pursuant to the contractual terms between SD Wheel and Logfret, SD Wheel as promised to indemnify and hold Logfret harmless from any claims and/or liability, loss, damages, costs, claims and/or expenses, including but not limited to attorney's fees, which Logfret may incur, suffer or be required to pay by reason of claims by any government agency or private party due to liability arising from the importation of merchandise. As the transactions detailed above are in the nature of liability arising from the importation of merchandise, SD Wheel would be required to indemnify Logfret against its own claim. Such Circuity of Action serves as a covenant not to sue. (Exhibit 2 Section 16).

## SEVENTH AFFIRMATIVE DEFENSE
### (Lack of Privity)

Some of all of the transactions as described in the Complaint were undertaken pursuant to contracts between SD Wheel and third parties. Logfret was under no contractual obligation to SD Wheel as to those transactions and so bears no liability for any alleged breach of contract.

35

## EIGHTH AFFIRMATIVE DEFENSE
### (Reservation of Rights to Plead Additional Defenses)

Logfret reserves the right to plead additional affirmative defenses as the investigation into the allegations of the Complaint continues.

WHEREFORE, Defendant, LOGFRET, INC., prays this Court enter an Order of judgment in its favor and against Plaintiff, SD WHEEL Corp., and for its costs and such other and further relief as this Court deems just and proper.

Dated: August 13, 2021

/s/ *Michael L. Foran*
Michael L. Foran
Matthew R. Carlyon (Admitted *Pro Hac Vice*)
FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
222 North LaSalle Street, Suite 1400
Chicago, Illinois 60601
Tel: (312) 863-5000
Fax: (312) 863-5099
mforan@fgppr.com
mcarlyon@fgppr.com

*Counsel for Defendant Logfret Inc.*

36

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above document was filed electronically with the above-captioned court, with notice of case activity to be generated and sent electronically by the Clerk of said court to the attorney listed below (with a copy to be mailed to any individuals who do not receive electronic notice from the Clerk) this 13th day of August, 2021.

**Counsel for Plaintiff**:
Sherry D. Coley
Tiffany E. Woelfel
DAVIS & KULTHAU
318 South Washington Street, Suite 300
Green Bay, Wisconsin 54301
Tel: (920) 431-2239
Fax: (920) 431-2279
scoley@dkattorneys.com
twoelfel@dkattorneys.com

*/s/ Michael L. Foran*
Michael L. Foran