## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

SD WHEEL CORP.,

      Plaintiff,

v.

LOGFRET, INC.

      Defendant/Third-Party Plaintiff

v.

SCHMIDT, PRITCHARD & COMPANY, INC.,

      Third-Party Defendant.

Case No. 1:21-cv-00778-WCG

## MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

- 1 -

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................................i

TABLE OF AUTHORITIES ....................................................................................................ii

STATEMENT OF FACTS ....................................................................................................- 2 -

ARGUMENT........................................................................................................................- 6 -

I.    The Court Should Dismiss Logfret's Claim for Breach of Express Contract Because the Complaint Fails to Allege a Contract Between Logfret and Schmidt Pritchard. ................- 7 -

II.    Logfret Fails to State a Claim for Breach of Implied Contract Because the Complaint Fails to Allege an Implied Contract Between Logfret and Schmidt Pritchard...........................- 10 -

III.  Logfret Fails to State a Claim for Negligence Because the Complaint Fails to Allege That Schmidt, Pritchard Owed Any Duty to Logfret.................................................................- 10 -

IV.  The Complaint Fails to State a Claim for Contribution Because No Judgement Has Been Issued or Paid by Logfret. .........................................................................................- 14 -

i

## TABLE OF AUTHORITIES

**Cases:**

*Aldana v. Del Monte Fresh Produce, N.A.*, Inc., 416 F.3d 1242 (11th Cir. 2005) .....................7

*American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010)..................................7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................................................................7

*Capitol Converting Equipment v. Lep Transport*, 750 F. Supp. 862 (N.D. Ill. 1990).........14,15

*Kafka v. Pope*, 194 Wis. 2d 234, 533 N.W.2d 491 (Wis. 1995)...............................................11

*Lanier at McEver v. Planners & Engineers Collaborative*, 284 Ga. 204 (2008) .... 11-12,15-16

*Piedmont Arbors Condominium Ass'n. v. BPI Constr. Co.*, 197 Ga. App. 141
(Ga. App. 1990)......................................................................................................................12,16

*South Florida Water Management District v. Montalvo*, 84 F.3d 402 (11th Cir. 1996) ............7

*Wait v. Pierce*, 191 Wis. 202, 210 N.W. 822 (1926) .................................................................11

*2010-1 SFG Venture LLC v. Lee Bank & Trust Co.*, 332 Ga. App. 894
(Ga. App. 2015).......................................................................................................................12,15,16


**Statutes:**

19 U.S.C. § 1301..........................................................................................................................3

19 U.S.C. § 1641..........................................................................................................................6

28 U.S.C. § 1404(a) .....................................................................................................................1


**Regulations:**

19 C.F.R. § 111.1..................................................................................................................3, 6,8,9

19 C.F.R. §141.32 ...................................................................................................................7,10

19 C.F.R. §141.46 ...................................................................................................................7,10


**Rules:**

Rule 12(b)(6)..................................................................................................................................1

ii

Third-Party Defendant Schmidt, Pritchard & Company, Inc. ("Schmidt Pritchard"), by counsel, respectfully bring this Motion to Dismiss Defendant/Third-Party Plaintiff Logfret, Inc.'s ("Logfret") First Amended Third-Party Complaint ("the Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state upon which relief can be granted.

This dispute arises from an error in the filing of claims for a potential refund of tariffs paid by SD Wheel. Facing substantial liability in the original action brought by SD Wheel, Logfret brings this suit against Schmidt Pritchard in an effort to pass off responsibility for its own failure to satisfy the duties it owed to SD Wheel. But Logfret's claims that Schmidt Pritchard breached a contract with SD Wheel must fail. Logfret, of course, cannot bring a claim for breach of a contract between SD Wheel and Schmidt Pritchard, because Logfret is not a party to that contract. Similarly, Logfret cannot bring claims for negligence or breach of any other duty purportedly owed by Schmidt Pritchard to SD Wheel.[1]

Moreover, even if Logfret had a claim against Schmidt Pritchard (and it does not), any liability would be subject to a valid and enforceable limitation of liability clearly set forth in Schmidt Pritchard's Terms and Conditions. Logfret is well aware of Schmidt Pritchard's limitation of liability provision, which is standard for their industry. In fact, Logfret's Terms and Conditions includes the exact same provision, as the parties have discussed. But although Logfret seeks to invoke the limitation of liability against SD Wheel, it apparently refuses to acknowledge the exact same limitation of liability clearly applies to Schmidt Pritchard.[2]

---

[1] SD Wheel brought suit against Logfret for breach of contract and other duties, including a number of allegations relating to matters that Logfret does not and cannot attempt to pass off on Schmidt Pritchard; there are clearly disputes between SD Wheel and Logfret other than the matter raised in the Logfret's Third-Party Complaint.
[2] As discussed in detail at pp. 11 & 14, *infra*, the limitation of liability applies even in the case of negligence. A plaintiff would have to prove gross negligence to defeat the limitation of liability. There are no allegations of gross negligence in Logfret's Complaint against Schmidt Pritchard, and no allegations of fact that could possibly be construed as gross negligence.

Finally, even if Logfret could bring claims against Schmidt Pritchard – and it cannot – those claims could only be brought in Georgia, and Georgia law would apply. Schmidt Pritchard's Terms and Conditions include clear choice of law and choice of venue provisions. Pursuant to those provisions, Schmidt Pritchard seeks a transfer of venue to the Federal District Court for the District of Northern Georgia. Schmidt Pritchard's Motion to Transfer Venue was filed earlier in the day but on the same day as this Motion to Dismiss.

## STATEMENT OF FACTS

Third party plaintiff, Logfret, Inc. ("Logfret") is a licensed Customs broker and a foreign freight forwarder licensed by the U.S. Federal Maritime Commission. Logfret brought this action alleging that Defendant Schmidt, Pritchard & Company, Inc. ("Schmidt Pritchard") breached an express contract or implied contract between the parties that called for Schmidt Pritchard to perform some "Customs business" on behalf of SD Wheel Corp., the Plaintiff in the case filed against Logfret. "Customs business" is defined in the Customs Regulations at 19 C.F.R. §111.1. The specific Customs business that Schmidt Pritchard was to perform consisted of filing protests with U.S. Customs and Border Protection to contest the imposition of duties on certain Customs entries of merchandise imported from China and to obtain the appropriate duty refunds, which amounted to 25% of the value of the goods imported by SD Wheel. The basis for the recovery of the duties was a specific statutory exemption that Schmidt Pritchard discovered and brought to the attention of SD Wheel. The specific statutory exemption applied to metal alloy automobile wheels from China that were assessed with 25% penalty duties under Section 301 of the Tariff Act of 1930, as amended (19 U.S.C. § 1301). Logfret further alleged that Schmidt Pritchard was negligent in performing the duties it owed Logfret. As a result of Schmidt Pritchard's alleged breach of contract or implied contract and/or negligence, Logfret

- 2 -

alleges that it is entitled to contribution from Schmidt Pritchard for any damages for which it is found liable to SD Wheel.

Filing protests falls squarely within the definition of "Customs business" in 19 C.F.R. 111.1 in that it involves "the refund . . . of . . . duties" and "the preparation . . . of documents in any format . . . intended to be filed with CBP in furtherance of any other Customs activity." Only importers, licensed Customs brokers, lawyers, and sureties are permitted to file protests with Customs.

SD Wheel imported some thirty-one shipments of metal alloy automobile wheels from China that are subject of this lawsuit. Each shipment was subject of a separate Customs "entry," which essentially is the importer's declaration of the particulars of the transaction (value, tariff classification, duties and fees due, etc.) and can be likened to a tax return. After Schmidt Pritchard notified SD Wheel of the existence of the exemption and SD Wheel and Schmidt Pritchard satisfied themselves that the tariff exemption applied to SD Wheel's merchandise, Schmidt Pritchard proceeded to file protests to recover the excess duties. Schmidt Pritchard asked SD Wheel to provide the specific Customs entries that contained the merchandise eligible for the duty refunds and SD Wheel identified the applicable entries and sent three separate emails to Logfret and asked Logfret to pass them on to Schmidt Pritchard for protest. Logfret then emailed the applicable entries on to Schmidt Pritchard. The email from Logfret setting forth fifteen container numbers subject to ten entries in the body of the email and setting forth twenty-seven additional container numbers subject to twenty-one entries were included in two separate attachments to the email. Essentially, Logfret combined three separate emails from SD Wheel into one confusing email which resulted in Schmidt Pritchard overlooking the entries in the two separate attachments. Schmidt Pritchard then filed protests against only the ten entries set forth

in the body of the email. Refunds were issued to SD Wheel for all of the ten entries covering the fifteen container numbers set forth in the body of the email and protested by Schmidt Pritchard. However, no refunds were issued to SD Wheel for the twenty-one entries subject to the twenty-seven container numbers on the two separate attachments to the email. The duty refunds that could have been recovered on these twenty-one entries are the gravamen of Logfret's action against Schmidt Pritchard. Schmidt Pritchard has done business with SD Wheel for approximately seven years and has filed about two hundred customs entries in its behalf and has had numerous email exchanges and telephone calls with SD Wheel personnel over this period of time. Despite these numerous direct dealings, SD Wheel chose to issue its instructions to Schmidt Pritchard to file protests to Logfret instead of directly to Schmidt Pritchard. As mentioned above, Logfret passed these instructions on to Schmidt Pritchard via email, but Schmidt Pritchard overlooked the twenty-one entries that were set forth in separate attachments to the email.

Schmidt Pritchard has provided only Customs brokerage services to SD Wheel or ancillary services related to its transaction of Customs business on their behalf. Logfret acted primarily as SD Wheel's freight forwarder during this time period, although it also may have transacted some Customs business in SD Wheel's behalf. In addition to receiving messages from SD Wheel that SD Wheel funneled through Logfret, Schmidt Pritchard billed its service charges to SD Wheel through Logfret. This was done for SD Wheel's convenience so it would get one unified bill for each shipment instead of receiving separate bills from Logfret for forwarding services and from Schmidt Pritchard for Customs entry services. Thus, Schmidt Pritchard billed SD Wheel through Logfret over two hundred times during the seven years it worked for SD Wheel. On each of Schmidt Pritchard's invoices sent to SD Wheel via Logfret

the following legend was prominently displayed, in capital letters: THIS ORDER IS SUBJECT TO TERMS AND CONDITIONS AVAILABLE ON REQUEST. See Exhibit 1 for a copy of a Schmidt Pritchard invoice displaying this statement. Despite the fact that Schmidt Pritchard personnel and SD Wheel personnel have directly dealt with each other for some seven years, SD Wheel chose to issue its instructions to Schmidt Pritchard to file protests to Logfret instead of directly to Schmidt Pritchard. As mentioned above, Logfret passed these instructions on to Schmidt Pritchard via email, but Schmidt Pritchard overlooked the twenty-seven container numbers subject to the twenty-one entries that were set forth in separate attachments to the email.

In support of its breach of contract claim against Schmidt Pritchard, Logfret attached two Customs powers of attorney from SD Wheel. In one power of attorney (Exhibit 1 to Logfret's Complaint), SD Wheel appointed Logfret as a licensed Customs broker that is authorized to transact Customs business in its behalf; in the other power of attorney (Exhibit 2 to Logfret's Complaint), Logfret appointed Schmidt Pritchard as a licensed Customs broker that is authorized to transact Customs business in its behalf. We note that the power of attorney attached to Logfret's Complaint, *attached hereto* as Exhibit 2, is not the most recent power of attorney SD Wheel issued to Schmidt Pritchard. SD Wheel signed the newest and current power of attorney on October 25, 2018, *attached hereto* as Exhibit 3, and this power of attorney was operative during the times relevant to this action. Thus, although SD Wheel signed the power of attorney in favor of Schmidt Pritchard attached to Logfret's complaint, the later-dated power of attorney superseded this previous power of attorney. In both instances, the power of attorney was signed by the CEO of SD Wheel.

Customs brokers are highly regulated by the Federal Government. (*See* 19 U.S.C. § 1641 and 19 C.F.R. generally & 19 C.F.R. § 111 in particular.) This makes sense because the

Customs laws and regulations are extremely complex and brokers compute duties, taxes and

fees, address admissibility issues, work with Customs and other governmental agencies in

preventing the importation of drugs and contraband such as counterfeit trademarked goods and

handle large amounts of Government Revenue. Most importers employ Customs brokers.  The

Customs Regulations permit only importers or licensed Customs brokers to file Customs entries.

If an importer uses a Customs broker, the Customs Regulations require that the importer appoint

the Customs broker as its attorney in fact and stipulate that the power of attorney contain specific

language.  See 19 C.F.R. §§ 141.46 and 141.32.

When SD Wheel executed its two powers of attorney in favor of Schmidt Pritchard on

March 12, 2015, and October 25, 2018, it specifically acknowledged receipt of Schmidt

Pritchard's Terms and Conditions of Service.  Enclosed as Exhibit 3 is a copy of Schmidt

Pritchard's Terms and Conditions of Service, which are attached with the power of attorney.

The Terms and Conditions of Service are modeled after those recommended by the National

Customs Brokers and Forwarders Association, an industry trade group, and are widely used by

Customs brokers across the United States.  In fact, Logfret has provided us with a copy of its

Terms and Conditions of Service that were agreed to by SD Wheel and they are substantially the

same as those used by Schmidt Pritchard and agreed to by SD Wheel.

## ARGUMENT

To survive a motion to dismiss for failure to state a claim, a complaint must "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007).  Although for purposes of the motion, the factual allegations in the complaint are

assumed to be true, "'unwarranted deductions of fact' are not admitted as true."  *Aldana v. Del*

- 6 -

*Monte Fresh Produce, N.A.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (*quoting S. Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (1996)). Nor are conclusory allegations and legal conclusions admitted as true. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

The Complaint here clearly fails to meet this standard, as it fails to allege any contract or duty owed from to Logfret from SD Wheel.

**I.     The Court Should Dismiss Logfret's Claim for Breach of Express Contract Because the Complaint Fails to Allege a Contract Between Logfret and Schmidt Pritchard.**

Logfret's cause of action for breach of express contract must fail, because Logfret fails to allege any express contract with Schmidt Pritchard.[3] No such contract is referenced in, much less attached to the complaint.

Instead, the Complaint cites to powers of attorney executed by SD Wheel in favor of Logfret and Schmidt Pritchard, respectively, but these documents establish only the relationship between SD Wheel and Logfret, and, separately, between SD Wheel and Schmidt Pritchard. Neither document suggests much less creates a contractual relationship between Logfret and Schmidt Pritchard.

A customs power of attorney involves three parties: the principal, the agent, and U.S. Customs and Border Protection ("CBP"). Here, the principal, SD Wheel, engaged the customs broker to transact customs business in its behalf. Customs business is defined in Section 111.1 of the Customs Regulations:

> *Customs business*. "Customs business" means those activities involving transactions with CBP concerning the entry and admissibility of merchandise, its classification and valuation, the payment of duties,

---

[3] The Complaint alleges counts for claims for Breach of Contract (Count I) and Breach of Implied Contract (Count II). Because there is a separate count for Breach of Implied Contract, we address Count I as Breach of Express Contract.

- 7 -

> taxes, and other charges assessed or collected by CBP on merchandise by
> reason of its importation, and the refund, rebate, or drawback of those
> duties, taxes, or other charges. "Customs business" also includes the
> preparation, and activities relating to the preparation, of documents in
> any format and the electronic transmission of documents and parts of
> documents intended to be filed with CBP in furtherance of any other
> customs business or activity, whether or not signed or filed by the
> preparer. However, "customs business" does not include the mere
> electronic transmission of data received for transmission to CBP and
> does not include a corporate compliance activity.

(19 C.F.R. 111.1) Here, Schmidt Pritchard was requested to prepare protests on SD Wheel's behalf. Schmidt Pritchard's activity in preparing those protests was not under any agreement with Logfret, but under the power of attorney issued by SD Wheel and for the sole benefit of SD Wheel. Schmidt Pritchard transacted no work for Logfret whatsoever, and transacted no customs business on behalf of Logfret. That is, it did nothing whatever for Logfret that involved "customs business."

Logfret merely acted as an agent of SD Wheel; it did nothing more than pass data on to Schmidt Pritchard on behalf of SD Wheel. The definition of "customs business" does not include the mere electronic transmission of data received for transmission to CBP and does not include a corporate compliance activity. This was intentional: the exclusion of "corporate compliance activity" from the definition of "customs business" was done to permit a company with expertise in customs laws and regulations to work with related companies to assist them in their customs compliance matters. *See* 19 C.F.R. 111.1. The exclusion of mere data transmitters was designed to clarify that service companies that merely transmitted data to Customs were not considered to be transacting customs business.

In the same vein, when Logfret transmitted data to Schmidt Pritchard it was not acting as a customs broker nor was it transacting customs business. It was acting merely as a messenger. When an agent for a principal forwards information to another party at the behest of the

- 8 -

principal, no agency relationship or contractual relationship is created between the agent and the recipient of the messenger by virtue of simply transferring information. If this were the case, every time an agent imparted information to a third party at the request of its principal, a contractual or agency relationship would be created between the agent and the principal.

As mentioned above, if an importer chooses to use a customs broker, the Customs Regulations require not only that the importer appoint the customs broker as its attorney in fact; the also stipulate that the power of attorney must contain specific language. *See* 19 C.F.R. §§141.46 and 141.32. These requirements speak to the kind of agreement between the parties that is necessary to create an agency relationship. Passing on information to a third party at the request of one's principal relieves the agent of its duty to pass on the information. That is all it does. To suggest it allows the agent to pursue claims on behalf of the agent is absurd.

In essence, Logfret is asking the Court to create a relationship between Logfret and a third party, Schmidt Pritchard, because Logfret passed on information to this third party at the instruction of its principal. However, when Schmidt Pritchard prepared the protests involved here and inadvertently omitted some of the entries, it was not working on behalf of Logfret, but on behalf of SD Wheel. The authority to file the protests and seek refund of duties came from SD Wheel, not Logfret. Schmidt Pritchard, work on the transaction at issue were for SD Wheel, and SD Wheel only. Schmidt Pritchard had authority to file the protests as attorney-in-fact for SD Wheel and possessed a valid power of attorney that complied with the strict customs regulations that govern powers of attorney. The fact that SD Wheel used Logfret to pass this information on to Schmidt Pritchard does nothing to change the real relationship that was at work here. The contractual agreement is and was between SD Wheel and Schmidt Pritchard, only. Logfret is not a party to that agreement and has no standing to bring claims to enforce it.

**II.**     **Logfret Fails to State a Claim for Breach of Implied Contract Because the Complaint Fails to Allege an Implied Contract Between Logfret and Schmidt Pritchard.**

Logfret's cause of action for breach of implied contract fails for all of the same reasons. The complaint entirely fails to allege an implied contract. As explained above, Logfret merely acted as a messenger, forwarding information compiled by SD Wheel to Schmidt Pritchard. Absent some other facts, acting as a conduit for information does not create any contractual relationship between the conduit and the recipient of the information.

Logfret alleges, incorrectly, that Schmidt Pritchard breached a duty to Logfret. (Compl. ¶¶26-28.) Logfret is wrong. Schmidt Pritchard cannot breach a contractual duty absent the forming of a contract, and no contract with between Logfret and Schmidt Pritchard was ever formed.

**III.**     **Logfret Fails to State a Claim for Negligence Because the Complaint Fails to Allege That Schmidt Pritchard Owed Any Duty to Logfret.**

The Complaint fails to state a claim for negligence because it fails to allege that Schmidt Pritchard owed a duty to Logfret. Logfret alleges only that it served as an agent of SD Wheel, relaying information from SD Wheel to Schmidt Pritchard. That is insufficient to allege a that Schmidt Pritchard owed a duty of care to Logfret; the only duty was owed to SD Wheel.

That said, even if Schmidt Pritchard owed a duty to Logfret – and it does not – a valid and enforceable limitation would apply. Logfret alleges that Schmidt Pritchard was negligent in not protesting all of entries Logfret included in its email. However, the transactions between Logfret and Schmidt Pritchard are governed by Schmidt Pritchard's Terms and Conditions of Service, which are governed by the law of Georgia. (*See* Exh. 1 at ¶ 19.)  Those Terms and

- 10 -

Conditions include a valid and enforceable limitation on liability, providing a maximum of $50 per claim.  Id. at ¶9.

Under Georgia law, parties are free to contract among themselves to limit their liability, with three general exceptions.  The Georgia courts will not enforce limitations of liability where such enforcement is 1) against public policy, or 2) results from a contract of adhesion, or 3) where the conduct of the party asserting the limitation of liability amounts to gross negligence or was done intentionally.  *See 2010-1 SFG Venture LLC v. Lee Bank & Tr. Co*., 332 Ga. App. 894, 897-900 (2015) ("Exculpatory clauses in Georgia are valid and binding, and are not void as against public policy when a business relieves itself from its own negligence.").  *See also Lanier at McEver v. Planners & Engineers Collaborative*, 284 Ga. 204, 205 (2008) ("a party may contract away liability to the other party for the consequences of his own negligence"); *Piedmont Arbors Condominium Assn. v. BPI Constr. Co.*, 197 Ga. App. 141, 142 (1990) ("Absent a public policy interest, contracting parties are free to contract to waive numerous and substantial rights, including the right to seek recourse in the event of a breach by the other party").

None of the three exceptions apply or are even alleged to apply here.  Logfret has alleged only simple negligence on the part of Schmidt Pritchard, not gross negligence.  Nor could Logfret allege gross negligence – there are simply no facts to support an allegation of gross negligence.  Indeed, Logfret failed to allege gross negligence in both the original third-party complaint and the amended third-party complaint, although counsel for Schmidt Pritchard pointed out this deficiency during the unsuccessful settlement negotiations between the parties.

Schmidt Pritchard was not negligent, as the facts will show.  But even if Schmidt Pritchard was negligent, ¶9 of the Terms and Conditions of Service apply to limit the company's liability to $50.00 per entry and further provide that the company is not responsible for

- 11 -

consequential or punitive damages.  Subparagraphs 9(d) and (e) of Schmidt Pritchard's Terms

and Conditions are clear on these points and provide:

> 9.      Disclaimers; Limitation of Liability.
>                    *       *       *
> d)      In the absence of additional coverage under (b) above, the
> Company's liability shall be limited to the following:
> (i)      Where the claim arises from activities other than those relating
> to customs brokerage, $50.00 per shipment or transaction, or
> (ii)      Where the claim arises from activities relating to "Customs
> business", $50.00 per entry or the amount of brokerage fees paid to
> the Company for the entry, whichever is less;
> e)      In no event shall the Company be liable or responsible for
> consequential, indirect, incidental, statutory or punitive damages even
> if it has been put on notice of the possibility of such damages.

(Exh. 1 at ¶ 9.)  Schmidt Pritchard alerted Logfret on over two hundred occasions that work it

performed for anyone, whether it be Logfret or SD Wheel, was subject to its terms and

conditions.  *See* page 5, *supra*.  In this connection, Logfret received and processed over two

hundred Schmidt Pritchard invoices bearing the legend "THIS ORDER IS SUBJECT TO

TERMS AND CONDITIONS AVAILABLE ON REQUEST."  Such clear notifications over a

period of several years establishes a course of dealing whereby these terms and conditions are

incorporated into and become part and parcel of any agreement or dealings between the parties.

In fact, SD Wheel explicitly agreed to them when it signed the powers of attorney in Schmidt

Pritchard's favor in 2015 and 2018.  *See* Exhibits 2 and 3, respectively.

The Seventh Circuit case of *Capitol Converting Equipment*, v. *Lep Transport*, 750 F.

Supp. 862 (N.D. Ill. 1990), is instructive.  The *Lep Transport* case involved a dispute between a

customs broker, Lep Transport, and an importer, Capitol Converting Equipment.  When the

importer sued Lep Transport for damages resulting from the handling of an import transaction

for Capitol, Lep Transport asserted that its liability was limited to $50 per package under its

Terms and Conditions of Service.  Lep Transport established that it had engaged in hundreds of

transactions with Capitol and that each of its invoices contained these same terms and conditions. The Court agreed that that the numerous transactions between the two established a course of dealing between the parties and that the terms and conditions had become part and parcel of the dealings between the parties.

*Lep Transport* applies here, where the parties engaged in over two hundred transactions, all covered by Schmidt Pritchard's Terms and Conditions of Service. Every invoice included the language, "THIS ORDER IS SUBJECT TO TERMS AND CONDITIONS AVAILABLE ON REQUEST." Logfret is a freight forwarder licensed by the U.S. Federal Maritime Commission, and a licensed customs broker; sophisticated and experienced in commercial transactions involving the movement of international freight and the customs formalities attendant to such commercial transactions. Moreover, *Logfret's Terms and Conditions include the exact same limitation of liability*. *See* Exhibit 4. Logfret's Terms and Conditions of Service. Both Logfret and Schmidt Pritchard's adopted the NCBFAA's terms and conditions of service, which are the industry standard and are commonly used by customs brokers and freight forwarders throughout the United States. As Logfret's Terms and Conditions of Service are modeled after the NCBFAA's recommended terms and conditions of service – just as Schmidt Pritchard's are – it is apparent that Logfret knew Schmidt Pritchard employed the same limitation on liability.

The law is clear that limitations of liability such as the one involved here are valid and enforceable. *See 2010-1 SFG Venture,* 332 Ga. App. at 897-900 ("Exculpatory clauses in Georgia are valid and binding, and are not void as against public policy when a business relieves itself from its own negligence.").[4] *See also Lanier at McEver*, 284 Ga. at 20 ("a party may

---

[4] As previously pointed out, Schmidt Pritchard's Terms & Conditions include a choice of law clause requiring the application of Georgia law; there is also a choice of venue clause restricting claims to state and federal courts located in Georgia. (Terms & conditions, ¶21.) That said, the principles cited in the Georgia cases cited here are universal.

contract away liability to the other party for the consequences of his own negligence"); *Piedmont Arbors.*, 197 Ga. App. at 142 ("Absent a public policy interest, contracting parties are free to contract to waive numerous and substantial rights, including the right to seek recourse in the event of a breach by the other party").

The only exception to this general rule is where the defendant engaged in gross negligence, but there is no allegation of gross negligence here. Gross negligence is deemed to be "equivalent to failure to exercise even a slight degree of care. It is materially more want of care than constitutes simple inadvertence." *2010-1 SFG Venture LLC*, 332 Ga. App. at 897-900. "A simple clerical error is not equivalent to gross negligence or willful and wanton misconduct." *Id*. Moreover, as stated above, during settlement negotiations with Logfret and SD Wheel, we noted that Logfret's allegation of negligence was insufficient under Georgia law to overcome a limitation of liability provision in an agreement between the parties because under Georgia law the parties are free to negotiate away negligent conduct. To overcome the limitation of liability, the complainant must allege that the conduct was grossly negligent. An allegation of negligence is not sufficient to defeat the limitation of liability. Therefore, this claim should be dismissed for failure to plead a cause of action.

In view of the above, Schmidt Pritchard's Terms and Conditions of Service apply to its dealings with Logfret. Therefore, any liability on the part of Schmidt Pritchard under this lawsuit would be limited to $50.00 per entry.

IV.     **The Complaint Fails to State a Claim for Contribution Because No Judgement Has Been Issued or Paid by Logfret.**

Finally, Logfret's claim for contribution also fails. "When no express agreement confers a right of contribution, a party's right to seek contribution against another is premised on two

- 14 -

conditions: (1) the parties must be liable for the same obligation; and (2) the party seeking

contribution must have paid more than a fair share of the obligation." *Kafka v. Pope*, 194 Wis. 2d

234, 242-43, 533 N.W.2d 491, 494 (1995), *citing Wait v. Pierce*, 191 Wis. 202, 226, 210 N.W.

822, 823 (1926) ("Whether the common obligation be imposed by contract or grows out of a tort,

the thing that gives rise to the right of contribution is that one of the common obligors *has

discharged* more than his fair equitable share of the common liability," *emphasis added*).

   Logfret has not paid any amount to SD Wheel, and at this point, it is not certain that

Logfret will have to pay a judgement at all.  There may never be refund awarded on any of the

applications.  SD Wheel may have no claim at all against Logfret (or Schmidt Pritchard), thus,

any claim for contribution is premature.

* * * *

   For all of reasons detailed above, Third Party Defendant Schmidt Pritchard respectfully

requests that this Court dismiss Defendant/Third Party Plaintiff Logfret's complaint for failure to

state a claim.

Dated:  March 28, 2022                    Respectfully submitted,


                                          /s/ Guy R. Temple_____
                                          Guy R. Temple
                                          **REINHART BOERNER VAN DEUREN S.C.**
                                          1000 North Water Street, Suite 1700 | Milwaukee,
                                          WI 53202
                                          Tel: 414-298-8121
                                          Fax: 414-298-8097
                                          GTemple@reinhartlaw.com

                                          *Local Counsel for Third-Party Defendant Schmidt,*
                                          *Pritchard & Company, Inc.*


                                          Tom O'Donnell (IL No. 2091887)
                                          (Submission of application to E.D. Wis. pending)
                                          **Benjamin L. England & Associates, LLC** |
                                          810 Landmark Drive, Suite 126
                                          Glen Burnie, MD 21061
                                          Tel: (410) 220-2800
                                          Fax: (443) 583-1464

                                          *Local Counsel for Third-Party Defendant Schmidt,*
                                          *Pritchard & Company, Inc.*

- 16 -