IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

SD WHEEL CORP.,

        Plaintiff,

v.                                                 Case No.: 21-CV-778

LOGFRET, INC.,

        Defendant/Third-Party Plaintiff,

v.

SCHMIDT, PRITCHARD & COMPANY, INC.,

        Third-Party Defendant.

## PLAINTIFF'S, SD WHEEL CORP., OMNIBUS RESPONSE OPPOSING THIRD-PARTY DEFENDANT'S, SCHMIDT, PRITCHARD & COMPANY, INC., MOTIONS TO DISMISS COMPLAINT AND TRANSFER VENUE

Plaintiff, SD Wheel Corp. ("SD Wheel"), by and through its attorneys, Davis & Kuelthau, s.c., respectfully submits this Brief in Opposition to Third-Party Defendant's, Schmidt, Pritchard & Company, Inc. ("Schmidt Pritchard"), Motions to Dismiss Complaint ("Motion to Dismiss") and Transfer Venue ("Motion to Transfer", together, the "Motions").

### INTRODUCTION

**SD Wheel Complaint**

SD Wheel is an Illinois corporation with Wisconsin facilities that sells automotive equipment, including wheels, tires, lift kits and other automotive accessories. Compl., Dkt. No. 1 ¶¶ 2–3. SD Wheel imports some of the automotive equipment it sells from China. *Id*. ¶ 2. Logfret, Inc. ("Logfret") is a global logistics company, which coordinates international freight

transportation. *Id.* ¶ 8. Logfret also manages the custom and import processes for customers as part of the freight transportation process. *Id.* ¶ 9.

Since 2014, SD Wheel has hired Logfret to transport and import freight, primarily consisting of parts that SD Wheel imported from Chinese manufacturers. *Id.* ¶ 18. On November 12, 2014, SD Wheel executed a Power of Attorney for Customs and Forwarding Agent ("Logfret POA"), under which Logfret would act as SD Wheel's authorized agent. *Id.* ¶ 19. Under the Logfret POA, Logfret was to:

> Make, endorse, sign, declare, or swear to any customs entry, withdrawal, declaration, certificate, bill of lading, carnet, shipper's export declaration, commercial invoice, insurance certificate, draft or any other document(s) required by law or regulation in connection with the exportation, importation or transportation of any merchandise in or through the customs territory, shipped or cosigned by or to said grantor.

*Id.* ¶ 20. Since executing the Logfret POA, Logfret has acted as SD Wheel's authorized agent in handling the importation and transportation of freight. *Id.* ¶ 21.

In July 2018, the United Sates imposed tariffs on Chinese imports under the Trade Act of 1974 (the "Section 301 Tariffs"). *Id.* ¶ 26. Throughout late 2018 and early 2019, SD Wheel imported parts subject to the Section 301 Tariffs. *Id.* ¶ 27. When the Section 301 Tariffs were implemented, the Office of the United States Trade Representative ("USTR") also implemented an exclusion process and began issuing lists of goods which would be excluded from the Section 301 Tariffs, retroactive to July 2018. *Id.* ¶ 28. If a company paid a Section 301 Tariff on an item identified on one of the exclusionary lists, the company could seek a refund of the tariff paid (a "Duty Refund"). *Id.* ¶ 29. A Duty Refund could only be sought prior to liquidation or within 180 days after the entry had been liquidated. *Id.* ¶ 30.

On November 19, 2019, SD Wheel representatives sent three emails to Logfret representatives, labeled "Duty Refund Email #1," "Duty Refund Email #2," and "Duty Refund

Email #3" (collectively, the "Duty Refund Emails"). These emails identified import entries by container number and providing all necessary documents to begin the refund process. *Id.* ¶¶ 32–33. The three emails identified 31 entries in total. *Id.* ¶ 33. The 21 entries identified in Duty Refund Emails #2 and 3 remain at issue in this dispute. *Id.* ¶ 38.

After receiving the Duty Refund Emails, Logfret informed SD Wheel it would submit the duty refund paperwork for the entries that qualified for the exclusions. *Id.* ¶ 39. By November 25, 2019, SD Wheel confirmed that its entries were eligible for a Section 301 refund. *Id.* ¶ 45.

SD Wheel received no communications from Logfret for several months regarding the status of the refunds and reached out several times to inquire as to the status. *Id.* ¶ 46. Logfret confirmed all the refunds were submitted and that it would take months to receive the refund due to COVID-19. *Id.* ¶ 47. SD Wheel continued to follow up with Logfret seeking information regarding the status of its refunds and historical import documents throughout 2020 after receiving no refunds or documentation related to the last five years of import/export data or duty refunds, duty protests, or post summary corrections. *Id.* ¶¶ 48–58.

Upon information and belief, Logfret provides brokerage service for other customers and SD Wheel. *Id.* ¶ 62. SD Wheel requested Logfret process the Duty Refunds protests. *Id.* SD Wheel made no demand regarding whether Logfret handle the protests itself or use a third-party broker; rather SD Wheel allowed Logfret to make that determination itself. *Id.* Logfret elected to outsource the brokerage for SD Wheel's account. *Id.* SD Wheel did not communicate directly with the third-party broker. *Id.* SD Wheel's communication was solely with Logfret. *Id.* The relationship with the third-party broker was entirely owned by Logfret. *Id.*

After months without communication, SD Wheel ultimately learned that duty refunds had only been submitted for the transactions identified in Duty Refund Email #1. *Id.* ¶¶ 63–67. By the

time the error was discovered, the entries identified in Duty Refund Emails #2 and 3 were out of the protestable period and thus ineligible for Section 301 Refunds. *Id*. ¶ 67. As such, SD Wheel lost $306,277.70 in refunds for which it was eligible. *Id*. ¶ 67. Whether Logfret, Schmidt Pritchard, and/or some combination of both is responsible for the failure to submit paperwork protesting the entries in Duty Refund Emails #2 and 3 is the fundamental issue in this dispute.[1] SD Wheel filed this action against Logfret alleging breaches of fiduciary duties, breaches of implied contracts, negligent misrepresentations, and negligence.[2]

**Logfret Third-Party Complaint**

On or about October 26, 2021, Logfret filed a third-party complaint against the third-party broker, Schmidt Pritchard. Third-Party Compl., Dkt. No. 21. Logfret filed an amended third-party complaint on or about March 14, 2022. Am. Third-Party Compl., Dkt. No. 32. The following facts are alleged in Logfret's Amended Third-Party Complaint and should be assumed true for purposes of a motion to dismiss.

Schmidt Pritchard is an Illinois corporation that provides import and export business services. *Id*. ¶ 3. On or about March 12, 2015, SD Wheel signed a Customs Power of Attorney Agreement ("SP POA") with Schmidt Pritchard. *Id*. ¶ 8.

---

[1] It is worth noting that Schmidt Pritchard has repeatedly admitted to "overlooking" Duty Refund Emails #2 and 3. Mot. to Dismiss, Dkt. No. 34 at 4 ("As mentioned above, Logfret passed these instructions on to Schmidt Pritchard via email, but **Schmidt Pritchard overlooked the twenty-one entries** that were set forth in separate attachments to the email."), 5 ("As mentioned above, Logfret passed these instructions on to Schmidt Pritchard via email, but **Schmidt Pritchard overlooked the twenty-seven container numbers** subject to the twenty-one entries that were set forth in separate attachments to the email."), 9 ("However, when **Schmidt Pritchard prepared the protests involved here and inadvertently omitted some of the entries**, it was not working on behalf of Logfret, but on behalf of SD Wheel.") (emphasis added). However, at this point in the proceedings and without the benefit of discovery, SD Wheel takes no position as to whether Logfret, Schmidt Pritchard, or both parties are legally liable. Discovery may prove that while the initial failure was Schmidt Pritchard's, Logfret is also legally liable because it failed to monitor and control Schmidt Pritchard's actions. This determination need not be made at the motion to dismiss stage of proceedings.

[2] At the time SD Wheel filed suit, if and what role Schmidt Pritchard may have in the dispute was unclear. As such, SD Wheel only brought suit against Logfret.

4

On or about November 19, 2019, SD Wheel sent the Duty Refund Emails to Logfret representatives. *Id*. ¶ 9. Shortly thereafter, Logfret delivered all three emails to a representative of Schmidt Pritchard with instructions that these were refund requests for the SD Wheel exempt China duty taxes. *Id*. ¶ 12. Schmidt Pritchard then successfully obtained refunds for the containers identified in Duty Email #1 but failed to process the refunds for the containers identified in Duty Emails #2 and 3. *Id*. ¶¶ 16–17.

Logfret alleges that Schmidt Pritchard was acting as SD Wheel's agent via the SP POA, and that by failing to process the requests in Duty Refund Emails #2 and 3, Schmidt Pritchard thereby breached its contract with SD Wheel. *Id*. ¶¶ 20–24. Additionally, Logfret alleges that Schmidt Pritchard accepting the task of processing the Duty Refund Requests created an implied contract between Logfret and Schmidt Pritchard. *Id*. ¶ 26. By failing to process the Duty Refund Requests, Schmidt Pritchard breached this implied contract. *Id*. ¶ 28.

Subsequently, Schmidt Pritchard filed a Motion to Dismiss Logfret's Amended Third-Party Complaint for failure to state a claim. Mot. to Dismiss, Dkt. No. 34. This Court should deny the Motion to Dismiss because Schmidt Pritchard bases its Motion on its Terms and Conditions of Service ("SP Terms") and additional unsupported factual assertions, which were not contained within or referenced by the Amended Third-Party Complaint.[3] This Court cannot, and should not, consider this extraneous material in support of the Motion to Dismiss. As such, this Court should deny Schmidt Pritchard's Motion to Dismiss.

Alternatively, if the Court considers the SP Terms, the Court should still deny the Motion because the facts Schmidt Pritchard alleges are improperly based on unsupported assumptions and inferences. No substantial discovery has been conducted in this matter so that the truth as to these

---

[3] Nor were these facts referenced by SD Wheel in the Complaint, nor did SD Wheel have knowledge of the SP Terms until long after this matter was filed.

5

issues of material fact can even begin to be ascertained. This Court should reject Schmidt Pritchard's interpretation of these facts in this Motion and deny Schmidt Pritchard's Motion to Dismiss as wholly unsupported and inappropriately brought.

Additionally, Schmidt Pritchard brought a Motion to Transfer Venue, pursuant to 28 U.S.C. § 1404(a) based upon the SP Terms. Dkt. No. 33. While the Court may consider extraneous information when ruling on the Motion to Transfer, Schmidt Pritchard's Motion must be denied because it has failed to prove the SP Terms are applicable.

## LEGAL STANDARDS

"A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint." *Grose v. Rice*, No. 19-C-394, 2019 WL 7049704, at *1 (E.D. Wis. Dec. 23, 2019) (citing Fed. R. Civ. P. 12(b)(6); *Hallinan v. Fraternal Order of Police Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009)). A complaint must give a defendant notice of the claim and what the grounds are upon which it rests. *Id*. (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Therefore, in order to state a cognizable claim, a plaintiff is required only to "provide a 'short and plain statement of the claim showing [it] is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). Additionally,

> "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). In considering a motion to dismiss, the court construes all allegations in the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws all inferences in favor of the non-moving party. *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011). But while well-pleaded facts are accepted as true at the pleading stage, conclusions of law are not. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555.

*Id*.

A Court may "in the interest of justice," grant a motion to transfer a case to another district court "where it might have been brought," pursuant to 28 U.S.C. § 1404(a). "When a § 1404(a) motion is filed, a district court "must evaluate both the convenience of the parties and various public interest considerations." *Webber v. Armslist LLC*, __ F. Supp. 3d __, No. 20-C-1526, 2021 WL 5206580, at *1 (E.D. Wis. Nov. 9, 2021) (quoting *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013)). Unlike a Court's restriction on considering outside material when reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court may consider outside material when reviewing a motion to transfer without converting it into a Rule 56 motion for summary judgment. *Cf*. Fed. R. Civ. 12(d). This Court has explained the factors considered when reviewing a motion to transfer venue:

> Factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; ... and all other practical problems that make trial of a case easy, expeditious and inexpensive."

> *Id*. at 62, n.6, 134 S.Ct. 568 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). In evaluating whether a transfer would be in the interest of justice, "courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy*." Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

*Webber*, 2021 WL 5206580 at *2.

## ARGUMENT

### I.    The SP Terms Are Extrinsic Materials That Should Not Be Considered.

On a motion to dismiss, the general rule is a court should exclude additional material or evidence attached to or included in the motion that was not included in the complaint or convert the Rule 12(b)(6) motion for failure to state a claim into a Rule 56 motion for summary judgment.

7

*Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). The narrow exception to this rule making documents attached to a motion to dismiss considered part of the pleadings is when such documents "are referred to in the plaintiff's complaint and are central to his claim." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). In such instances, a district court may consider such documents to support a motion to dismiss. *Id.* Here, neither Logfret's Amended Third-Party Complaint nor SD Wheel's Complaint attached or referenced the SP Terms. Nowhere in either pleading is it stated or implied that the SP Terms are applicable to the transactions and relationships at issue in this dispute.

By asking the Court to consider the SP Terms, not only is Schmidt Pritchard asking the Court to consider extrinsic material on the Motion to Dismiss, it is also asking the Court to make an assumption in its favor that the SP Terms are applicable to this dispute. On a motion to dismiss, the Court is to resolve all reasonable doubts and inferences in the pleader's favor and view the pleading in the light most favorable to the non-moving party. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009). A significant dispute remains as to the applicability of the SP Terms to the subject transactions. As such, this Court should not make the assumption that the SP Terms are applicable when considering Schmidt Pritchard's Motion.

If Schmidt Pritchard wants to argue that the SP Terms apply, which, as it argues, would make Georgia law and the limitations of liability contained therein applicable, it must do so as a motion for summary judgment. It cannot do so on a motion to dismiss. Therefore, the Court should not consider any argument in Schmidt Pritchard's Motion based on the SP Terms, and to the extent Schmidt Pritchard's arguments in this Motion are based on the SP Terms, the Court should deny the Motion to Dismiss.

8

II.   **Schmidt Pritchard's Arguments are Improper for a Motion to Dismiss Because They are Based on Inferences, Assumptions, and Legal Conclusions.**

Nearly every argument Schmidt Pritchard asserts in its Motion is predicated on disputed facts (which were introduced by Schmidt Pritchard and not in either SD Wheel's Complaint or Logfret's Amended Third-Party Complaint), inferences, assumptions, or legal conclusions. Not only are these allegations in dispute and/or unsupported, but they are entirely improper for consideration on a motion to dismiss.

a.   **Schmidt Pritchard's Argument That No Contractual Relationship Exists Between Logfret and Schmidt Pritchard is Based on Legal Conclusions and Disputed Facts.**

Throughout its Motion, Schmidt Pritchard asserts Logfret was acting as an intermediary between SD Wheel and Schmidt Pritchard merely passing information to Schmidt Pritchard on behalf of SD Wheel. Mot. to Dismiss, Dkt. No. 34 at 8. Schmidt Pritchard argues Logfret did so at the instruction of SD Wheel, and states "[p]assing information to a third party at the request of one's principal relieves the agent of its duty to pass on the information." *Id*. at 9. Thus, Schmidt Pritchard asserts there cannot be a contractual relationship between Logfret and Schmidt Pritchard. *Id*. This argument is incorrectly based on disputed facts and is improperly asserted as a motion to dismiss. SD Wheel does not plead that Logfret was acting merely as an intermediary between SD Wheel and Schmidt Pritchard. *See generally* Compl., Dkt No. 1. Rather, SD Wheel explicitly alleges that it was working and communicating solely with Logfret and no other entity. *Id*. ¶ 62.

Schmidt Pritchard repeatedly asserts Logfret passed information to Schmidt Pritchard at the request of SD Wheel. Mot. To Dismiss, Dkt. No. 34 at 3–4, 8. Yet, this assertion is wholly unsupported and disputed. SD Wheel asked Logfret to file the requests for the Duty Refunds. Declaration of April Steckling ("Steckling Dec."), ¶ 2; Compl., Dkt No. 1, ¶¶ 32–33, 94. When it engaged Logfret to pursue the requests for the Duty Refunds, SD Wheel did not do so for the

purpose of having Logfret act as an intermediary between itself and Schmidt Pritchard to merely pass along information. *Id.* ¶ 5. SD Wheel's intention was for Logfret to pursue the Duty Refund Requests. *Id*. ¶¶ 4–6; Compl., Dkt. No. 1, ¶ 21. To characterize Logfret "merely as a messenger" is wholly inconsistent with the facts as alleged in the pleadings. Compl., Dkt. No. 1, ¶ 31–32, 93–94, 96. Which party was responsible to whom and what the precise party relationships may be are two of the fundamental legal issues in dispute and cannot be determined at this stage. These are disputes of material fact that need to be further developed through discovery. Moreover, the Court cannot adopt Schmidt Pritchard's mischaracterizations of fact as asserted in the Motion to Dismiss, because at this stage, the Court must adopt the facts as pled in the Complaint and Amended Third-Party Complaint.

Further, Schmidt Pritchard's assertion that there is no contractual relationship between itself and Logfret is a legal conclusion inconsistent with the allegations in the pleadings. Legal conclusions cannot be relied upon to support a motion to dismiss. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (explaining a court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements") (cleaned up). Taking the allegations in the pleadings as true, Schmidt Pritchard accepted the task of processing the Duty Refund Requests in exchange for a fee. Am. Third-Party Compl., Dkt. 31, ¶ 26. Schmidt Pritchard then breached that contract by not processing all of the Requests that it agreed to process. *Id*. ¶ 27. Logfret has sufficiently pled the existence of a contract between itself and Schmidt Pritchard.

In its Motion, Schmidt Pritchard has disputed the existence of any contract between itself and Logfret. However, on a motion to dismiss, the Court is not to make such a determination. Schmidt Pritchard can make such an argument after discovery through a motion for summary

judgment. On a motion to dismiss, however, the Court must take the factual allegation in the complaint as true. Logfret has sufficiently pled the existence and breach of a contract between itself and Schmidt Prichard to survive a motion to dismiss.

**b. The Applicability of the SP Terms is Disputed and Requires Further Discovery to be Determined.**

Schmidt Pritchard argues the SP Terms apply to the Duty Refund Requests, and that because the SP Terms apply, the limitation of liability contained therein applies as well as the choice of law provision specifying Georgia law as the governing law for the disputed transactions. Mot. to Dismiss, Dkt. No. 34 at 10–11. Even if the Court considers the SP Terms on this Motion, which as previously discussed, it should not, this argument fails for several reasons.

There remains a factual dispute as to whether SD Wheel or Logfret actually received the SP Terms. SD Wheel asserts that it did not receive the SP Terms until Schmidt Pritchard included them in documents produced in relation to this dispute in January 2022. Steckling Dec., ¶ 7. Under Georgia law, which Schmidt Pritchard asserts is the law that governs this dispute pursuant to the SP Terms, there is an issue of material fact as to whether SD Wheel adequately assented to the SP Terms. Moreover, SD Wheel has seen no evidence that Logfret ever received the SP Terms and no such evidence was included in either of Schmidt Pritchard's Motions. *See generally* Dkt. Nos. 33 & 34.

Under Georgia law, a contract is not binding unless each party has assented to all the terms of the contract. Ga. Code Ann., § 13-3-2. Georgia Courts have established that if a party has not had the opportunity to see the terms and conditions, it cannot have assented to the terms and conditions. *See Thornton v. Uber Technologies, Inc.*, 359 Ga. App. 790, 794, 858 S.E. 2d 255 (2021). In *Turfgrass Group, Inc. v. Georgia Cold Storage Co.*, 346 Ga. App. 659, the Georgia Court of Appeals addressed an issue similar to the subject dispute. There, a buyer argued it was

11

not bound by a seller's terms and conditions normally contained on the reverse side of the seller's warehouse receipt because it never received the warehouse receipt containing the terms and conditions. *Id*. at 660–61. The court agreed with the buyer that whether it received the terms and conditions was an issue of material fact needing to be addressed in order to determine whether the buyer was bound by the seller's terms and conditions. *Id*. at 668. If the buyer did not receive the warehouse receipt, it could not be bound to the terms and conditions. *Id*. at 667.

According to Schmidt Pritchard, the invoices it sent to Logfret stated "THIS ORDER IS SUBJECT TO TERMS AND CONDITIONS AVAILABLE ON REQUEST." Mot. to Dismiss, Dkt. No. 34 at 4–5. Schmidt Pritchard asserts these invoices were sent to SD Wheel via Logfret. *Id*. This is again a disputed fact because SD Wheel never received these invoices.[4] Steckling Dec., ¶ 9. Nor did SD Wheel ask Schmidt Pritchard to send its invoices through Logfret so it could get one unified bill. *Id*., ¶ 10. Rather, as Schmidt Pritchard admitted in its filing, SD Wheel received a singular bill from Logfret. Mot. to Dismiss, Dkt. No. 34 at 4. Therefore, the inference, which must be drawn in favor of SD Wheel, is that Logfret received these invoices, not SD Wheel, and then issued a singular invoice from Logfret to SD Wheel. Even if Logfret or SD Wheel had received these invoices, the invoices do not prove assent because the terms and conditions are not contained on the invoice. The invoices merely state that the terms and conditions are "available upon request." Simply put, this does not prove receipt of the terms and conditions by either Logfret or SD Wheel.

Based on Georgia law, SD Wheel and Logfret cannot be found to have assented to the SP Terms if they never received them. Because all inferences must be drawn in favor of SD Wheel

---

[4] Schmidt Pritchard will argue that the SP POA SD Wheel was asked by Logfret to execute included a statement that SD Wheel had received the SP Terms. However, SD Wheel vigorously disputes this fact and asserts that it did not receive the SP Terms until January 2022. Steckling Dec., ¶ 9.

and Logfret, as the non-moving parties, the Court cannot adopt Schmidt Pritchard's inference that because the invoices were issued, SD Wheel and Logfret have assented to the SP Terms. At minimum, there is clearly an issue of material fact as to whether either SD Wheel or Logfret has received the SP Terms, which would certainly bar summary judgment, if it were at such a stage. This dispute of material fact must warrant denial of the Motion to Dismiss, because there are sufficient facts to support the conclusion that the SP Terms do not apply and SD Wheel is entitled to relief.

Further, even if SD Wheel at some point assented to the SP Terms, that still does not necessarily show that the SP Terms govern the contract for Schmidt Pritchard to submit the Duty Requests. Throughout its Motion, Schmidt Pritchard conflates the SP POA and the SP Terms. Assuming arguendo SD Wheel's acknowledgment of receipt of the SP Terms contained in the SP POA validly indicates SD Wheel's assent to the SP Terms, the SP Terms do not appear applicable to the Duty Requests because the SP Terms explicitly require a separate written agreement for Schmidt Pritchard to submit a protest, like the Duty Refunds, on behalf of SD Wheel.

Paragraph 16 of the SP Terms states:

Unless requested by Customer in writing and agree [sic] to by Company in writing, Company shall be under no obligation to undertake any pre-or post Customs release action, including, but not limited to, obtaining binding rulings, advising of liquidations, filing of petitions(s), and/or protests, etc.

Mot. to Dismiss, Dkt. No. 34, Ex. 1. Therefore, the SP POA and the SP Terms are not sufficient, on their own, to create a requirement for Schmidt Pritchard to have submitted the Duty Refunds. *Id*. Rather, Schmidt Pritchard's legal obligation to submit the Duty Refunds arises out of a written agreement to do so—i.e. the emails exchanged between Logfret and Schmidt Pritchard in which Logfret asks Schmidt Pritchard to undertake the filing of the Duty Refunds and Schmidt Pritchard agrees. There is no evidence that the SP Terms govern this additional written obligation or that SD

13

Wheel agreed to be bound by the SP Terms as to any protest filed on its behalf by Schmidt Pritchard. Because of these disputed facts, and because SD Wheel's factual allegations, when accepted as true, sufficiently state a claim, this Court should deny Schmidt Pritchard's Motion to Dismiss.

### c. Schmidt Pritchard's Arguments As to Negligence and Contribution Fail as a Matter of Law.

Schmidt Pritchard's argument as to the negligence claim fails for a similar reason. Not only did Schmidt Pritchard repeatedly admit to its negligence in its motion, but its motion relies upon the application of the SP Terms, which have not been proven to apply and should not be considered as barring the negligence claim at this stage in the pleadings. *See* Mot. to Dismiss, Dkt. No. 34 at 4 ("As mentioned above, Logfret passed these instructions on to Schmidt Pritchard via email, but **Schmidt Pritchard overlooked the twenty-one entries** that were set forth in separate attachments to the email."), 5 ("As mentioned above, Logfret passed these instructions on to Schmidt Pritchard via email, but **Schmidt Pritchard overlooked the twenty-seven container numbers** subject to the twenty-one entries that were set forth in separate attachments to the email."), 9 ("However, when **Schmidt Pritchard prepared the protests involved here and inadvertently omitted some of the entries**, it was not working on behalf of Logfret, but on behalf of SD Wheel.") (emphasis added); *see also* section II.B, *supra*. Schmidt Pritchard's citation to *Capitol Converting Equipment, v. Lep Transport*, 750 F. Supp. 862 (N.D. Ill. 1990), is insufficient to save its claim. *Lep Transport* involved a direct relationship between a customs broker and an importer, which established a course of dealing. But there are no allegations in the Complaint that SD Wheel had a direct relationship with Schmidt Pritchard that would allow for the SP Terms to become part and parcel

14

of the dealings between the two. Rather, the Complaint repeatedly alleges that SD Wheel interacted exclusively with Logfret. *See generally* Compl., Dkt. No. 1, ¶ 96.[5]

Furthermore, even if the limitation of liability in the SP Terms is valid and enforceable, that is not grounds for granting a motion to dismiss because Schmidt Pritchard's liability is a separate issue from any limitation on damages that may be imposed. Because Schmidt Pritchard may still be found liable, even with a clause limiting liability, a valid negligence claim has been plausibly pled and Schmidt Pritchard's argument fails as a matter of law. *See, e.g.*, *Freeman v. Ocwen Loan Servicing, LLC*, No. 1:18-cv-03844-TWP-DLP, 2020 WL 7489033, at *14 (S.D. Ind. Dec. 21, 2020) ("Any argument concerning a cap to statutory damages is not a proper basis to dismiss outright the RESPA claim, and this damages issue need not be decided at the motion to dismiss stage.").

Likewise, Schmidt Pritchard's argument as to the contribution claim fails as a matter of law because it relies on an improper inference. Schmidt Pritchard argues that the contribution claim must fail because:

> Logfret has not paid any amount to SD Wheel, and at this point, it is not certain that Logfret will have to pay a judgement at all. There may never be refund awarded on any of the applications. SD Wheel may have no claim at all against Logfret (or Schmidt Pritchard), thus, any claim for contribution is premature.

Mot. to Dismiss, Dkt. No. 34 at 15. Such an argument relies on the inference that SD Wheel does not have a claim against Logfret. However, in reviewing a motion to dismiss, the Court cannot dismiss a claim simply because under one interpretation of the facts, the defendant may not be held liable. That would be an absurd standard, as every claim would be susceptible to a motion to dismiss. Rather, to survive a motion to dismiss, Logfret need only plead factual allegations, which

---

[5] Schmidt Pritchard's factual assertions about the relationship between it and SD Wheel are not only disputed by SD Wheel but are material that arise outside of the Complaint and must be excluded in the Rule 12(b)(6) analysis. *See* Fed. R. Civ. P. 12(d).

15

when accepted as true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 66, 678 (2009) (citations omitted). Logfret has sufficiently pled facts that would establish a claim for contribution. Not only has Logfret sufficiently pled such facts, but the Court must also take all inferences in favor of Logfret and SD Wheel, which would include the inference that Logfret would have to pay a judgment for which it is entitled to contribution from Schmidt Pritchard. *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011); *see also Van Duren v. Freer*, No. 10-C-753, 2013 WL 3246141, at *10 (E.D. Wis. 2013) ("However, there has been no determination regarding Chicago Title's liability or non-liability for negligence as to the Deed of Trust. Construing the facts in the light most favorable to the non-movant (Chicago Title), Freer has not established any basis to dismiss Chicago Title's contribution claims against him."). For these reasons, the Motion to Dismiss should be denied.

III. **The Forum Selection Clause in the SP Terms Cannot Form the Basis for a Transfer of Venue Because There Remains a Dispute as to Whether the SP Terms are Applicable.**

Schmidt Pritchard's entire basis for its Motion to Transfer is predicated on the forum-selection clause contained within the SP Terms. As detailed above, there remains significant dispute as to whether the SP Terms are applicable to the transactions at issue. The authority Schmidt Pritchard uses to support its argument in favor of transferring venue all presupposes a valid and enforceable forum. *See Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991). This is a determination that cannot be made at this time because of the dispute as to whether SD Wheel or Logfret ever assented to the SP Terms, so as to make them binding under Georgian law. As such this Court should not apply the forum selection clause contained within the SP Terms prior to the resolution of these fundamental factual disputes.

16

Moreover, even if the SP Terms did apply to the Duty Refund Requests, a motion to transfer venue filed by a third-party defendant is an atypical situation because statutory venue considerations do not protect a third-party brought into a lawsuit under Fed. R. Civ. P. 14. *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 209 (5th Cir.1996). "[I]n an effort to synthesize (1) the policy of enforcing forum selection clauses when fair, with (2) a third-party's typical inability to complain of venue, the Court determines that the movant's status as a third-party defendant must weigh in favor of retention in its § 1404(a) analysis." *Lafargue v. Union Pacific R.R.*, 154 F. Supp. 2d 1001, 1004 (S.D. Tex. 2001).

Schmidt Pritchard attempts to circumvent the § 1404(a) analysis by asking the Court to apply the forum selection clause without any other consideration. Given Schmidt Pritchard's status as a third-party, this is not proper. The forum selection clause is a factor in the § 1404(a) analysis but is not conclusive, especially considering Schmidt Pritchard's status as a third-party defendant.

The Court should only transfer a case under Section 1404(a) when: (1) venue is proper in the transferor district; (2) venue is proper in the transferee district; (3) the transfer will serve the convenience of the parties and witnesses; and (4) the transfer will serve the interests of justice. *See Gueorguiev v. Max Rave*, LLC, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007).

Other than the forum selection clause, the applicability of which is disputed, the § 1404(a) analysis favors venue being retained by this Court. There has been no argument that venue in this District is improper. There has been no argument to show that venue would be proper in Georgia. This Court is a significantly more convenient venue for the parties and witnesses. The transactions, communications, and records are located in Wisconsin. It would be significantly more burdensome on the parties to transfer this matter to Georgia.

17

This analysis is premature, however. The applicability and validity of the forum selection clause in the SP Terms is still in dispute. As such, this Court should deny Schmidt Pritchard's Motion to Transfer Venue at this time.

## CONCLUSION

For the reasons expressed above, Plaintiff, SD Wheel Corp., respectfully requests that the Court deny Third-Party Defendant's, Schmidt, Pritchard & Company, Inc., Motions to Dismiss Complaint and Transfer Venue.

Dated:  April 18, 2022.                    DAVIS & KUELTHAU, S.C.

                                           By:  s/ Sherry D. Coley
                                           Sherry D. Coley
                                           State Bar No. 1038243
                                           Tiffany E. Woelfel
                                           State Bar No. 1093779

                                           Attorneys for Plaintiff,
                                           *SD Wheel Corp.*

P.O. Address:
318 S. Washington Street, Suite 300
Green Bay, WI 54301
920.435.9378

Direct Contact Information:

Sherry D. Coley          920.431.2239 direct dial
                         920.431.2279 direct fax
                         scoley@dkattorneys.com

Tiffany E. Woelfel       920.431.2232 direct dial
                         920.431.2272 direct fax
                         twoelfel@dkattorneys.com

18